[L. A. No. 19486.  In Bank.  Dec. 18, 1946.]

LOWELL S. STUMP et al., Appellants, v. CORNELL CONSTRUCTION COMPANY (a Corporation), et al., Respondents.

M. C. Schrager for Appellants.

Ray L. Chesebro, City Attorney, Bourke Jones and Roger Arnebergh, Assistant City Attorneys, and Victor J. Obegi for Respondents.

GIBSON, C. J.—Plaintiffs have appealed from a judgment in favor of defendant city of Los Angeles determining that their title to a certain lot is subject to an easement for public alley and utility purposes.

The lot in question is part of a tract subdivided by the defendant Cornell Construction Company. In April, 1941, the company filed with the city a tentative subdivision map which contained no reference to the alley. The proposed subdivision was approved by the city planning commission subject to certain conditions requiring, among other things, that ''a future alley 20 feet in width be shown. . . .'' On May 22 the city council tentatively approved the proposed subdivision subject to the conditions prescribed by the planning commission. In June, 1941, the company submitted to the city council a final map of the tract which showed two parallel lines extending the full length of the tract across the rear portion of all the lots, together with labels reading: ''Easterly line of 10 ft. easement to City of Los Angeles for future alley and public utility purposes.'' The other 10 feet for the alley apparently was to be taken from an adjoining tract.

Printed at the top of the map is a statement to the effect that the owners of the land consent to the making and recording of the map and subdivision, that they dedicate an avenue, street and boulevard to public use, and that they ''hereby dedicate to public use for street and alley purposes, those certain strips of land designated as 'Future Street' and 'Future Alley,' shown on said map within said subdivision, reserving to ourselves for use of ourselves and successive owners of the respective lots shown on said map fronting on said strips, any and all ordinary uses of said land except the erection or construction of buildings thereon until such time as the legislative body shall accept the same for a public street and public alley. . . .'' The quoted language was taken, with minor changes, from the form provided in the subdivision ordinance.

The final tract map was approved by the city council and recorded on August 14, 1941. The city clerk certified on the

lower portion of the map as follows: "I hereby certify that the city council of the City of Los Angeles approved the attached map and accepted on behalf of the public all the streets, roads, alleys, highways and easements shown on said map and therein offered for dedication except those strips marked 'future street' and 'future alley'. . . ." On August 22, 1944, the city council adopted a resolution accepting the twenty foot strip as a public alley.

On December 26, 1941, which was shortly after the approval of the final map but prior to the adoption of the resolution of acceptance, the company sold the lot in question to Edwin and Vida Freund. Although the deed referred to the map and was expressly made subject to the conditions and easements contained in the "Declaration of Establishment of Conditions and Restrictions" recorded by the company on August 7, 1941, neither the deed nor the declaration referred specifically to the "future alley" shown on the map. The terms of the deed which plaintiffs received from the Freunds on November 30, 1942, do not appear in the record.

Plaintiffs contend that there was never a completed dedication of the alley to the city, that the company merely made an offer to dedicate, and that such offer was revoked prior to any acceptance by the city. It is not claimed that there was an express withdrawal of the offer but it is argued that the conveyance made by the company to the Freunds without reservation amounted to a revocation of the offer. Plaintiffs rely upon cases decided under the common law, but in ascertaining the rights of the parties we must determine the extent to which the common law rules have been modified by the adoption of the Subdivision Map Act which was in effect when the subdivision was created. (Stats. 1937, p. 1863, now a part of Bus. & Prof. Code, §§ 11500 et seq.)

That act (§ 20, see Bus. & Prof. Code, § 11611) required that upon approval of the final map, the governing body "shall at that time also accept or reject any or all offers of dedication . . .," and that the clerk shall certify on the map the acceptance or rejection by the public (§ 13(c), see Bus. & Prof. Code, § 11591). Another part of section 20 of the act (see Bus. & Prof. Code, § 11616) provided: "If at the time the final map is approved any streets are rejected the offer of dedication shall be deemed to remain open and the governing body may by resolution at any later date, and without further

action by the subdivider, rescind its action and accept and open said streets for public use, which acceptance shall be recorded in the office of the county recorder."

■ There is language in an early case (*Myers* v. *City of Oceanside,* 7 Cal.App. 87, 92 [93 P. 686]) to the effect that a dedication may be complete "if the map filed [shows] words of dedication on its face." (But cf. *County of Inyo* v. *Given,* 183 Cal. 415, 418 [191 P. 688].) It appears, however, that under the Subdivision Map Act, words of dedication on a map are treated merely as an offer and that the dedication is not completed until the offer is accepted by the city. (Bus. & Prof. Code §§ 11590, 11591, 11611 and 11616.) Therefore, the words of dedication on the map filed in the present case must be regarded as an offer to dedicate.

■ In support of their contention that the offer was revoked, plaintiff relies upon the case of *Schmitt* v. *San Francisco,* 100 Cal. 302, 308 [34 P. 961], which holds that a conveyance without reservation amounts to a revocation of an offer for dedication. (See, also, *People* v. *Southern Pac. R. R. Co.,* 68 Cal.App. 153, 160 [228 P. 726].) These cases, however, were decided before the adoption of the Subdivision Map Act in 1937,* and the provisions of that act clearly indicate an intention to abrogate the common law rule whereby an offer to dedicate might be impliedly revoked by a conveyance without reservation. There was no *express* revocation in this case and it is, therefore, unnecessary for us to determine whether the statute was intended to prevent a termination of the offer by that means.

■ The statute requires that the city either accept or reject an offer of dedication at the time it approves the final map. In the present case the city's acceptance of the offer to dedicate certain streets and alleys specifically excepted "those strips marked 'future street' and 'future alley.'" This constituted a rejection by the city of the offer to dedicate the "future alley," but by the terms of the statute the rejection was not final, the offer was deemed to remain open, and the city was authorized to rescind the rejection and accept the

---

*Earlier acts did not provide that offers of dedication should remain open nor did they contain any provisions changing the common law rules regarding revocation of such offers. (Stats. 1929, ch. 837, p. 1790 et seq.; Stats. 1907, ch. 231, p. 290 et seq.)

offer of dedication at any later date. The offer to dedicate the alley here involved was accepted and the dedication was completed in conformity with the statute by the resolution of the city council on August 22, 1944.

The judgment is affirmed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.