[S.F. No. 24572. July 2, 1984.]

T. M. COBB COMPANY, INC., Petitioner, v.
THE SUPERIOR COURT OF MARIN COUNTY, Respondent;
SHERRE STURM et al., Real Parties in Interest.

**COUNSEL**

Hardy & McPhee and Charles A. McPhee, Jr., for Petitioner.

No appearance for Respondent.

Michael D. Nelson and Soni Leighton for Real Parties in Interest.

**OPINION**

**BIRD, C. J.**—The sole issue presented by this case is whether an offer of compromise made pursuant to section 998 of the Code of Civil Procedure is revocable.

## I.

The relevant facts are not in dispute. Real parties in interest, Sherre Sturm and William Conrow (hereafter, real parties), sued petitioner, T. M. Cobb Company, Inc., and others for the negligent design and construction of real parties' residence. Cobb was the manufacturer and supplier of approximately 60 units of sash and glass for the windows used in the construction of the residence. Extensive leaks developed in and around the windows after construction was completed.[1]

---

[1] Leaks had also developed in and around doors which had been supplied by other defendants. However, these defendants are not involved in the present proceeding.

On July 21, 1982, real parties mailed to petitioner an offer to compromise pursuant to section 998 of the Code of Civil Procedure.[2] In the offer, real parties proposed a settlement in the amount of $10,000. In a declaration to the trial court, real parties' attorney stated that on or about August 16, 1982, petitioner made a counteroffer of $7,000 or $8,000 on the condition the offer be accepted that day. The counteroffer was rejected, and the parties continued the discovery process.

Several depositions were taken in August. The deposition testimony suggested that petitioner was considerably more culpable than real parties had realized at the time the original offer was made. As a result, on August 20, 1982, real parties wrote to petitioner stating that they were revoking their offer of July 21st. Petitioner received the letter the following day. In a letter to real parties dated August 25, 1982, petitioner acknowledged that it had received real parties' letter purporting to revoke their offer. Petitioner nevertheless stated that it was accepting real parties' offer of July 21st. On the same day, petitioner filed its "acceptance" in superior court pursuant to section 998.[3]

Real parties then filed a motion to strike petitioner's acceptance and petitioner filed a motion for entry of judgment in accordance with the offer.

---

[2]Section 998 provides in pertinent part: "(b) Not less than 10 days prior to commencement of the trial as defined in subdivision 1 of Section 581, any party may serve an offer in writing upon any other party to the action to allow judgment to be taken in accordance with the terms and conditions stated at that time. If such offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge shall enter judgment accordingly. If such offer is not accepted prior to trial or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the trial.

"(c) If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment, the plaintiff shall not recover his costs and shall pay the defendant's costs from the time of the offer. In addition, in any action or proceeding other than an eminent domain action, the court, in its discretion, may require the plaintiff to pay the defendant's costs from the date of filing of the complaint and a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, the preparation or trial of the case by the defendant.

"(d) If an offer made by a plaintiff is not accepted and the defendant fails to obtain a more favorable judgment, the court in its discretion may require the defendant to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, the preparation or trial of the case by the plaintiff, in addition to plaintiff's costs."

All statutory references are to the Code of Civil Procedure unless otherwise indicated.

[3]Section 998 provides that an offer is withdrawn if not accepted within 30 days. Petitioner's acceptance was filed 35 days after real parties' offer was mailed. Petitioner argues that its acceptance was timely on the theory that where a section 998 offer is served by mail, the time for acceptance is extended by five days pursuant to section 1013. That section provides that if a document is served by mail, any duty to make a response within any prescribed period is extended five days if the place of address is in California.

In light of this court's determination that real parties properly revoked their offer (see *post*, p. 283), it is not necessary to reach the question as to whether the 30-day acceptance period in section 998 is extended by section 1013 when an offer is served by mail.

The superior court granted real parties' motion to strike and denied petitioner's motion for entry of judgment.

Petitioner now seeks a peremptory writ of mandate directing the superior court to vacate its order striking petitioner's acceptance and to grant petitioner's motion to enter judgment in accordance with the offer.

## II

This court must decide whether an offer of compromise made pursuant to section 998 may be revoked by the offeror prior to its acceptance by the offeree.

Section 998, subdivision (b) provides: "Not less than 10 days prior to commencement of the trial as defined in subdivision 1 of Section 581, any party may serve an offer in writing upon any other party to the action to allow judgment to be taken in accordance with the terms and conditions stated at that time. If such offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge shall enter judgment accordingly. If such offer is not accepted prior to trial or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the trial."

"The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.]" (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672]; accord *Martinez* v. *Traubner* (1982) 32 Cal.3d 755, 758 [187 Cal.Rptr. 251, 653 P.2d 1046]; *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) In determining such intent, the court must first look to the words of the statute. (*Ibid.*)

Section 998 is completely silent as to the revocability or irrevocability of offers made pursuant to that section. The statute does provide, inter alia, for termination by operation of law: an offer "shall be deemed withdrawn" if it "is not accepted . . . within 30 days after it is made . . . ." Petitioner asserts that this language signifies that the offer is irrevocable for those 30 days. However, real parties contend that the use of the word "withdrawn" in section 998 indicates that offers made pursuant to that section are revocable prior to acceptance.

Both parties read too much into the above-quoted language. This language addresses only the effect that a lapse of a prescribed period of time—30 days—will have on an offer made pursuant to the statute. Upon expiration

of the 30-day period, the offer is considered withdrawn, and it may no longer be accepted. That is not the situation here. The statute does not address whether an offeror may voluntarily withdraw his or her offer prior to acceptance by the offeree and prior to the expiration of the 30-day period. Nothing in the quoted language of the statute resolves the question whether such an offer is revocable or irrevocable.[4]

 It is a well-established principle of contract law that an offer may be revoked by the offeror any time prior to acceptance. (Civ. Code, § 1586; *Grieve* v. *Mullaly* (1930) 211 Cal. 77, 79 [293 P. 619]; 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 122, p. 122; Rest.2d Contracts, § 42.) In light of this firmly established principle of contract law, it is clear that if the Legislature intended to make section 998 offers irrevocable, it would have expressly and unequivocally said so.[5] It did not. In the absence of such language, the general rule that offers may be revoked prior to acceptance should apply.

Petitioner argues, however, that under section 998, general contract law has no applicability until after an offer has been made and accepted. Relying

---

[4]The dissent asserts, however, that prior authority requires the conclusion that section 998 offers are irrevocable. (See *post,* p. 284.) The "prior authority" relied on by the dissent consists of 19th century New York cases and a California case, *Scammon* v. *Denio* (1887) 72 Cal. 393 [14 P.98]. (See *post,* p. 287.)

*Scammon,* however, is inapposite. That case involved the issue as to whether a plaintiff who did not accept an offer of compromise—which was made on the day of the trial—was precluded from recovering costs where the trial had concluded before the five-day (see *post,* fn. 6) statutory period had expired. (72 Cal. at pp. 395-397.) The court, holding that the plaintiff was entitled to costs, noted that if the trial ended before the five days were up, the offer of compromise "simply goes for naught." (*Id.,* at p. 396.) The court never addressed the question as to whether statutory offers of compromise are revocable or irrevocable.

As for the New York cases, there is no rule requiring that this court follow decisions of a sister state. Moreover, the New York cases are distinguishable in that they involved a statute with a 10-day period. Section 998, on the other hand, involves a 30-day statutory period.

[5]For example, the Legislature has used such unequivocal language concerning offers of dedication. Government Code section 66477.2, subdivision (a) provides that if at the time a final subdivision map is approved, any streets, paths, alleys, etc. are rejected, ". . . *the offer of dedication shall remain open* and the legislative body may by resolution at any later date, . . ." rescind its action and accept the offer of dedication. (Italics added.) The predecessor to Government Code section 66477.2, subdivision (a) is former Business and Professions Code section 11616. (Added by Stats. 1943, ch. 128, § 1, p. 876, and repealed by Stats. 1974, ch. 1536, § 1, p. 3464, eff. March 1, 1975.) This latter section contained language identical to that emphasized above. The provisions of former Business and Professions Code section 11616 were found to have clearly indicated a legislative intent to abrogate the right to revoke (expressly or impliedly) an offer of dedication in any manner except that prescribed by the statute. (*County of Orange* v. *Cole* (1950) 96 Cal.App.2d 163, 169-170 [215 P.2d 41]; see also *Stump* v. *Cornell Construction Co.* (1946) 29 Cal.2d 448, 451 [175 P.2d 510].) By negative implication, then, the absence of such explicit language would seem to indicate a contrary legislative intent. The same reasoning applies here. If the Legislature intended to abrogate the right to revoke an offer of compromise, it would have stated with unmistakable clarity that an offer made pursuant to section 998 "shall remain open."

[6] *Distefano* involved a statutory offer of compromise made pursuant to the predecesor to section 998, former section 997. (Added by Stats. 1851, ch. 5, § 390, p. 113, and repealed by Stats. 1971, ch. 1679, § 1, p. 3605.) That section provided for statutory offers of compromise by defendants only. Such offers were deemed to be withdrawn if they were not accepted within five days. This five-day period was later extended to a ten-day period. (Stats. 1969, ch. 277, § 1, p. 626.) Section 998 was enacted in 1971. (Stats. 1971, ch. 1679, § 3, pp. 3605-3606.) It expanded former section 997's coverage to include statutory offers of compromise by plaintiffs as well as defendants. Under section 998, such offers are now deemed withdrawn if not accepted within 30 days. The theory and purpose of the statute remained the same. (Compare *Distefano, supra,* 263 Cal.App.2d at p. 385 [§ 997] with *Shain* v. *City of Albany* (1980) 106 Cal. App.3d 294, 298-299 [165 Cal. Rptr. 69] [§ 998].)

[7] See footnote 6.

on the recent Court of Appeal decision in *Gallagher* v. *Heritage* (1983) 144 Cal.App.3d 546 [192 Cal.Rptr. 614], petitioner argues that general contract law principles simply do not apply to the process of offer and acceptance under the statute. In *Gallagher,* the court held that "[o]nce a statutory offer is made and the time for acceptance [has] expired, the offeror is cloaked with the protections provided in [section 998]," (*id.,* at p. 550) and the offer may not be revoked by a subsequent oral offer. (*Id.,* at pp. 547-548.) In reaching its conclusion, the Court of Appeal stated that "when an acceptance has not been effected [pursuant to section 998], contract law has no applicability." (*Ibid.*)

The *Gallagher* court did not clearly state why it felt contract law had no applicability. The court appears to have reasoned that general contract law does not apply to the process of offer and acceptance under section 998 because the "timeliness, manner and method of offer and acceptance, is set forth in [section 998]." (*Gallagher, supra,* 144 Cal.App.3d at p. 550, fn. omitted.) However, this reasoning is not persuasive. Section 998 addresses some, but not all, of the aspects of the offer and acceptance process. As previously noted, it has no provision regarding the revocability of section 998 offers. (*Ante,* p. 277.) Nor does it address the effect of a subsequent statutory offer on a prior statutory offer. These questions can only be answered by turning to general principles of contract law.

Unlike the *Gallagher* court, other courts have applied general contract law principles to statutory offers of compromise. For example, in *Distefano* v. *Hall* (1968) 263 Cal.App.2d 380, 385 [69 Cal.Rptr. 691], defendants' second statutory offer was held to have extinguished their first statutory offer in accord with the general contract rule that a subsequent offer made prior to acceptance extinguishes and replaces a prior offer.[6] The Court of Appeal reasoned that "the theory of section 997[7] is that the process of settlement and compromise is a contractual one, and the applicable principles are those relating to contracts in general [citation]." (*Id.,* at p. 385.)

And, in *Ward* v. *Superior Court* (1973) 35 Cal.App.3d 67, 69 [110 Cal.Rptr. 501], a purported revocation of a section 998 offer was held to

---

[6]*Distefano* involved a statutory offer of compromise made pursuant to the predecessor to section 998, former section 997. (Added by Stats. 1851, ch. 5, § 390, p. 113, and repealed by Stats. 1971, ch. 1679, § 1, p. 3605.) That section provided for statutory offers of compromise by defendants only. Such offers were deemed to be withdrawn if they were not accepted within five days. This five-day period was later extended to a ten-day period. (Stats. 1969, ch. 277, § 1, p. 626.) Section 998 was enacted in 1971. (Stats. 1971, ch. 1679, § 3, pp. 3605-3606.) It expanded former section 997's coverage to include statutory offers of compromise by plaintiffs as well as defendants. Under section 998, such offers are not deemed withdrawn if not accepted within 30 days. The theory and purpose of the statute remained the same. (Compare *Distefano, supra,* 263 Cal.App.2d at p. 385 [§ 997] with *Shain v. City of Albany* (1980) 106 Cal.App.3d 294, 298-299 [165 Cal.Rptr. 69] [§ 998].)

[7]See footnote 6.

be ineffective because it had not been communicated directly to the offeree as required by well-established principles of contract law. Citing *Distefano,* the court noted that "acceptance [of a statutory offer of compromise] is governed by the basic laws of contract." (*Ward* v. *Superior Court, supra,* 35 Cal.App.3d at p. 69.)

The reasoning in *Distefano* and *Ward* is persuasive. Since section 998 involves the process of settlement and compromise and since this process is a contractual one, it is appropriate for contract law principles to govern the offer and acceptance process under section 998. There is no reason to postpone the application of contract law principles until after an offer has been made and accepted.[8]

■ Of course, general contract law principles should apply to section 998 offers and acceptances only where such principles neither conflict with the statute nor defeat its purpose. (See *Distefano, supra,* 263 Cal.App.2d at pp. 384-385.) ■ As recognized in numerous Court of Appeal decisions, the clear purpose of section 998 and its predecessor, former section 997, is to encourage the settlement of lawsuits prior to trial. (*Shain* v. *City of Albany, supra,* 106 Cal.App.3d at pp. 298-299; *Brown* v. *Nolan* (1979) 98 Cal.App.3d 445, 449 [159 Cal.Rptr. 469]; *Distefano* v. *Hall, supra,* 263 Cal.App.2d at p. 385; *Bennett* v. *Brown* (1963) 212 Cal.App.2d 685, 688 [28 Cal.Rptr. 485].) Both parties contend that their position best effectuates that policy.

Petitioner argues that settlement is best encouraged by allowing an offer to remain open for the entire statutory period so that an offeree has a reasonable amount of time to consider the offer. In support of its position, petitioner relies on the Court of Appeal decision in *Lum* v. *Superior Court* (1983) 141 Cal.App.3d 952 [190 Cal.Rptr. 599]. In *Lum,* the court held that an offer of compromise made pursuant to section 998 is irrevocable for the statutory period. (*Id.,* at p. 956.) The court reasoned that a particular settlement would be defeated if an offeror were allowed to withdraw the offer within the statutory period. (*Id.,* at p. 955.) The argument seems to be that the legislative purpose of encouraging settlements is frustrated when an offer is withdrawn because settlement based upon that particular offer is no longer possible.

Real parties, on the other hand, contend that the policy of encouraging settlements would be frustrated by a holding that section 998 offers are irrevocable. If offers are irrevocable, real parties argue, fewer offers will

---

[8]To the extent any language in *Gallagher* v. *Heritage, supra,* 144 Cal.App.3d 546 is inconsistent with this opinion, it is disapproved.

be made. Accordingly, there will be fewer offers on which to base any settlement. Thus, to promote settlements, real parties argue, offers made pursuant to section 998 must be revocable.

Real parties are correct that the policy of encouraging settlements is best promoted by making section 998 offers revocable.[9] A party is more likely to make an offer pursuant to section 998 if that party knows that the offer may be revised if circumstances change or new evidence develops. Conversely, a party who knows that he or she is strictly bound to the terms of the first offer made may be reluctant to make such an offer for fear of being locked into a position which becomes unfavorable upon the discovery of additional information. If a party is more likely to make a revocable offer, and less likely to make an irrevocable one, then more offers will be made if revocation is permitted. The more offers that are made, the more likely the chance for settlement. Thus, it is apparent that the general contract law principle that offers are revocable until accepted serves rather than defeats the statutory purpose of encouraging settlements.

The inhibitory effect on offers which would result if a rule of irrevocability were adopted is particularly evident in cases involving expert testimony. By statute, such testimony cannot be discovered until 50 days prior to trial. (See § 2037 et seq.) A party who has already made an offer may discover new evidence from the offeree's experts which indicates that the offeree may be more culpable than the offeror first realized. In order to avoid this problem, a party might not make an offer until all the expert evidence has been discovered. By that time, it might well be too late for the party to make a section 998 offer since such offers must be made at least 10 days prior to trial. Moreover, it would make little sense to prohibit the offeror from revoking an offer which was based on an incomplete understanding of the relevant facts. To encourage parties to make offers pursuant to section 998, and to ensure that those offers are based on as complete an understanding of the facts as possible, such offers must be revocable.

This court's determination that section 998 offers are revocable also promotes the public policy of compensating injured parties. This policy would be frustrated if section 998 offers were irrevocable. As previously noted, newly discovered evidence may indicate that a certain defendant is more or less culpable than originally thought. It might also indicate that a plaintiff is more seriously injured than appeared from the initial evidence. Under such circumstances, an offer made prior to the discovery of the additional evidence might no longer be adequate to fairly compensate a plaintiff. If the

---

[9]To the extent that *Lum* v. *Superior Court, supra,* 141 Cal.App.3d 952 is inconsistent with this opinion, it is disapproved.

offer is irrevocable, an injured party-offeror would be bound to an offer which will not compensate him or her fairly. However, if the offer may be revoked, the offeror can either propose a new offer in light of the newly discovered evidence or proceed to trial and present all the evidence in an attempt to be compensated fairly by the trier of fact's decision. Thus, the public policy of compensating an injured party is best served if section 998 offers are revocable.

Alternatively, petitioner contends that an irrevocable *option* is created when an offer is made pursuant to section 998. Petitioner asserts that consideration for this irrevocable option is conferred by the statute itself. That is, the statute confers a benefit on the offeror to which he or she would not ordinarily be entitled—costs in the event the offeree fails to obtain a more favorable judgment. And, if the offeree fails to accept the offer and fails to obtain a more favorable judgment, he or she is faced with a potential detriment—payment of costs for which the offeree would not ordinarily be responsible. In addition, petitioner argues that the necessary consent to the creation of an irrevocable option may be found in the fact that the offeror made an offer pursuant to the statute.

Petitioner's argument that an irrevocable option contract is created lacks merit. Mutual consent—a prerequisite to the existence of the purported irrevocable option contract—is absent.

■ "It is universally accepted that an *option agreement is a contract* distinct from the contract to which the option relates, since it does not bind the optionee to perform or enter into the contract upon the terms specified in the option." (*Warner Bros. Pictures* v. *Brodel* (1948) 31 Cal.2d 766, 771-772 [192 P.2d 949, 3 A.L.R.2d 691], italics added.) ■ However, mutual consent of the parties is essential for a contract to exist (Civ. Code, §§ 1550, 1565), and "[c]onsent is not mutual, unless the parties all agree upon the same thing in the same sense. . . ." (Civ. Code, § 1580.) "The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe. [Citation.] Accordingly, the primary focus in determining the existence of mutual consent is upon the acts of the parties involved." (*Meyer* v. *Benko* (1976) 55 Cal.App.3d 937, 942-943 [127 Cal.Rptr. 846].)

■ In the present case, the parties never agreed that the offer was irrevocable or that they were consenting to an irrevocable option contract. When real parties made the offer there was no indication that the offer was irrevocable.

Petitioner's argument—that consent is present because real parties made an offer pursuant to the statute—is flawed. Nothing in the statute implies that the offer is irrevocable. (See *ante,* p. 277.) ■ ■ ■ ■ Consequently, there is nothing in the statute which notifies a party that his or her offer will be irrevocable should he or she decide to make an offer pursuant to the statute.[10] Thus, real parties cannot be held to have consented to the creation of an irrevocable option by simply choosing to make an offer pursuant to section 998.[11]

■ Real parties made an offer to compromise pursuant to section 998. This offer was not made irrevocable by the statute, itself. Nor was an irrevocable option contract created. Since real parties properly revoked their offer prior to any acceptance,[12] petitioner could not thereafter accept the offer.[13]

### III.

It is a well-established principle of contract law that offers may be revoked prior to acceptance. Section 998's purpose of encouraging settlements is best promoted when this fundamental contract principle is applied to offers made pursuant to that section. The Legislature did not expressly provide for the irrevocability of offers in section 998, nor did it limit the applicability of contract law to that section. This court will not imply that offers are

---

[10]Since there is nothing in the statute which notifies a party—or, for that matter, any reasonable person—that an offer made pursuant to the statute is irrevocable, the dissent's belief that "[u]nder the objective theory of contracts, [real parties] must be deemed to have intended that the offer of settlement would be open for the statutory period" is untenable. (See *post,* p. 289.)

It is well established that " '[a]n irrevocable option is a contract made for consideration, to keep an offer open for a prescribed period.' " (*Palo Alto Town & Country Village, Inc. v. BBTC Company* (1974) 11 Cal.3d 494, 499-500 [113 Cal.Rptr. 705, 521 P.2d 1097] quoting 1 Witkin, Summary of Cal. Law (8th ed. 1973) p. 124, italics omitted.) The dissent believes that the statute provides the consideration necessary for an irrevocable option contract. (See *post,* p. 289.) However, even assuming there was consideration, there was no agreement "to keep an offer open for a prescribed period." The parties did not agree to keep the offer open. The statute does not state that the offer will remain open for 30 days, nor does anything in the statute imply irrevocability. Since there was no agreement to keep the offer open for the prescribed period, there was no irrevocable option.

[11]Since the "irrevocable option" fails for lack of mutual consent, this court need not address petitioner's contention that consideration is supplied by the statute.

[12]Real parties' letter of August 10th to petitioner stating that they were revoking their offer satisfied the requirements for an effective revocation. (Civ. Code, § 1587, subd. 1.)

[13]The dissent argues that this holding, combined with the literal wording of the statute, will permit parties to make offers, revoke them, and nevertheless gain the cost benefits of the statute. (See *post,* p. 285.) However, that anomalous result can be avoided simply by giving the word "offer" a sensible construction. It should be apparent that an offer that is revoked prior to acceptance no longer functions as an "offer" for purposes of the cost benefit provisions. (See § 998, subds. (c), (d); *ante,* fn. 2.)

irrevocable in the face of well established contract law principles and public policies to the contrary.

The alternative writ is discharged, and the petition for a peremptory writ of mandate is denied.

Mosk, J., Kaus, J., Reynoso, J., and Pollak, J.,* concurred.

**BROUSSARD, J.**—I dissent.

The language of Code of Civil Procedure section 998, historical considerations, prior authority, and sound public policy require the conclusion that offers made pursuant to the code section are irrevocable and may be accepted until deemed withdrawn under the terms of the statute.

Section 998, subdivision (b) provides: "Not less than 10 days prior to commencement of the trial as defined in subdivision 1 of Section 581, any party may serve an offer in writing upon any other party to the action to allow judgment to be taken in accordance with the terms and conditions stated at that time. If such offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge shall enter judgment accordingly. If such offer is not accepted prior to trial or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the trial."

Other provisions of the section state that if an offer is made by defendant and not accepted and the plaintiff fails to obtain a more favorable judgment, the plaintiff will be denied recovery of costs, shall pay defendant's costs from the time of the offer, and may be compelled to pay all of defendant's costs, including expert witness costs. If plaintiff's offer is not accepted and defendant fails to secure a more favorable judgment, defendant may be required to pay expert witness costs.[1]

---

*Assigned by the Chairperson of the Judicial Council.

[1]Section 998 provides: "(a) The costs allowed under Sections 1031 and 1032 shall be withheld or augmented as provided in this section.

"(b) Not less than 10 days prior to commencement of the trial as defined in subdivision 1 of Section 581, any party may serve an offer in writing upon any other party to the action to allow judgment to be taken in accordance with the terms and conditions stated at that time. If such offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge shall enter judgment accordingly. If such offer is not accepted prior to trial or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the trial.

"(c) If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment, the plaintiff shall not recover his costs and shall pay the defendant's costs from the time of the offer. In addition, in any action or proceeding other than an eminent domain action, the court, in its discretion, may require the plaintiff to pay the

In construing statutes, courts should ascertain the intent of the Legislature so as to effectuate the purpose of the law. In doing so the court looks first to words of the statute. (*Martinez* v. *Traubner* (1982) 32 Cal.3d 755, 758 [187 Cal.Rptr. 251, 653 P.2d 1046]; *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) Although the language does not expressly provide that the offer made pursuant to the section may not be revoked, this clearly is the contemplation of the provisions of the statute. The statute provides that once an offer is made pursuant to the statute there are two alternatives. If the offer is accepted, a judgment is to be entered. If the offer is not accepted within the statutory period, the offeror is entitled to an opportunity to obtain the cost benefits set forth in the statute.

To conclude, as the majority do, that an offer may be revoked so as to preclude acceptance within the statutory period either requires a wholesale rewriting of the code section or permits an anomalous result, providing an opportunity for chicanery. The word "offer" as used in the section may not be read as meaning a revocable offer, because such a reading would produce an anomalous result. For example, if the word "offer" in subdivision (c) is read as revocable offer, the subdivision would provide: "If [a revocable] offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment, the plaintiff shall not recover his costs and shall pay the defendant's costs from the time of the offer. . . ." Under the literal wording of the provision, the defendant would be entitled to an opportunity to obtain the cost benefits even though he revokes his offer before acceptance. The defendant could obtain the benefits of the section by making an offer and revoking it a few hours later prior to acceptance, obviously an anomalous result which could not have been intended by the Legislature. To avoid the anomalous result while reaching the majority conclusion that the offer is revocable it is necessary to add a third alternative to the section, providing that if an offer is revoked within the period described in the statute

defendant's costs from the date of filing of the complaint and a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, the preparation or trial of the case by the defendant.

"(d) If an offer made by a plaintiff is not accepted and the defendant fails to obtain a more favorable judgment, the court in its discretion may require the defendant to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, the preparation or trial of the case by the plaintiff, in addition to plaintiff's costs.

"(e) Police officers shall be deemed to be expert witnesses for the purposes of this section; plaintiff includes a cross-complainant and defendant includes a cross-defendant. Any judgment entered pursuant to this section shall be deemed to be a compromise settlement.

"(f) The provisions of this chapter shall not apply to an offer which is made by a plaintiff in an eminent domain action.

"(g) The costs for services of expert witnesses for trial under subdivisions (c) and (d) shall not exceed those specified in Section 68092.5 of the Government Code."

the offeror will not be entitled to an opportunity to obtain the cost benefits set forth in the statute.

To avoid the anomaly, the majority conclude that "an offer that is revoked prior to acceptance no longer functions as an 'offer' for purposes of the cost benefit provisions." (See *ante,* at p. 283, fn. 13.) The result is that the first four times "offer" is used in section 998 it is given its ordinary meaning, the fifth time a special meaning, the sixth time the ordinary meaning, and the seventh time the special meaning. (See fn. 1.) "It is well settled that a word or phrase should be given the same scope or meaning when it appears in separate parts of a statute." (*People* v. *Mirmirani* (1981) 30 Cal.3d 375, 382, fn. 6 [178 Cal.Rptr. 792, 636 P.2d 1130].) While the settled rule is not inflexible and will not be applied where the legislative intent to provide different meanings is clear (*People* v. *Hernandez* (1981) 30 Cal.3d 462, 468 [179 Cal.Rptr. 239, 637 P.2d 706]), the majority do not claim that the legislative intent is clear but to the contrary argue that the language of the code section is unclear. (*Ante,* at p. 278.)

The provision that the offer is "deemed withdrawn" after 30 days also shows that offers under the statute are irrevocable. If statutory offers are irrevocable there is reason for the automatic termination—otherwise the offer would remain open indefinitely. However, no substantial reason appears for the cutoff if the offer is revocable. Considering that the obvious purpose of the statute is to promote settlements, the purpose would best be served, if offers are revocable, by leaving the offer open until the offeror chose to revoke it, a period which often might be in excess of the 30-day period set forth in the statute.

The predecessor of section 998 providing for an opportunity to obtain costs on the basis of a settlement offer was first enacted in 1851. (Stats. 1851, ch. 5, § 390, p. 113.) The section was substantially the same as the New York Code of Procedure, section 385 which was derived from the Field Code (First Rep. to the Com. on Prac. & Pleadings, Code Proc., § 338 (1848)) except that the New York provision allowed ten days for acceptance, while the California provision allowed five.

As originally drafted, the California provision applied only to offers by defendant, set a five-day period of acceptance beyond which the offer was deemed withdrawn, and provided for entry of judgment by the clerk. The New York courts early established that the statutory offer to compromise was not revocable. The cases reasoned that the code expressly allows the plaintiff 10 days to consider the offer, that the code provision represents a regulation of procedure rather than a contract, that the offer to compromise is in the nature of an option with consideration in the form of an opportunity to avoid costs, and that, if the statute were construed to permit revocation of offers, it would become an instrument "of trifling and chicane." (*Pom-*

*eroy* v. *Hulin* (1852) 7 How. Pr. 161, 162-163; *Walker* v. *Johnson* (1853) 8 How. Pr. 240, 241; *Herman* v. *Lyons* (1877) 10 Hun. 111; *McVicar* v. *Keating* (1897) 19 App.Div. 581, 582 [46 N.Y.Supp. 298]; *Hackett* v. *Edwards, Merrill & Co.* (1898) 22 Misc. 659, 660 [49 N.Y.Supp. 609].) The earlier New York cases were cited with approval in *Scammon* v. *Denio* (1887) 72 Cal. 393, 396-397 [14 P. 98] where the court stated that plaintiff shall have five days to consider the offer. Federal Rules of Civil Procedure, rule 68 (28 U.S.C.) has also been construed to provide that offers to compromise are irrevocable. (See Udall, May Offers of Judgment Under Rule 68 Be Revoked Before Acceptance? (1959) 19 F.R.D. 401; see also *Mubi* v. *Broomfield* (1972) 108 Ariz. 39 [492 P.2d 700, 702].)

The short period for acceptance, the automatic entry of a judgment by the clerk leaving no room for determination whether an offer may have been revoked, and the reasoning of the New York cases compel the conclusion that the statutory offers are irrevocable for the statutory period. There is nothing to indicate that when the Legislature provided for the longer 30-day period (Stats. 1969, ch. 570, § 1, p. 1200), it intended that the offers become revocable.

Consideration of the legislative purpose also supports the view that offers made pursuant to the section are irrevocable. "The purpose of this section is to encourage the settlement of litigation without trial. (*Distefano* v. *Hall* (1968) 263 Cal.App.2d 380, 385 [69 Cal.Rptr. 691].) Its effect is to punish the plaintiff who fails to accept a reasonable offer from a defendant." (*Brown* v. *Nolan* (1979) 98 Cal.App.3d 445, 449 [159 Cal.Rptr. 469]; *Pineda* v. *Los Angeles Turf Club, Inc.* (1980) 112 Cal.App.3d 53, 63 [169 Cal.Rptr. 66]; *Shain* v. *City of Albany* (1980) 106 Cal.App.3d 294, 299 [165 Cal.Rptr. 69].) When, as in the instant case, the plaintiff makes an offer under the section, the effect of the statute is to punish the defendant who fails to accept a reasonable offer.

It is apparent that if the offeror is permitted to revoke the offer within the statutory time and before acceptance, the settlement will be defeated. The settlement period established by the Legislature is short and provides an offeree a reasonable period to cogitate and make a decision. If the offer is permitted to be revoked before an adequate time has passed to consider and respond to the offer, the legislative policy of encouraging settlements is frustrated.

The statute does not require a party to litigation to offer to settle but gives any party that option on specified terms and provides potential benefits for the offeror. By making the offer, the offeror must accept the burdens of the offer with its benefits.

For these reasons the court in *Lum* v. *Superior Court* (1983) 141 Cal.App.3d 952 [190 Cal.Rptr. 599] concluded that offers made pursuant to section 998 are irrevocable for the statutory period. We should follow *Lum*.

The majority urge that the settlement will be furthered by permitting the statutory offers to be revoked because, knowing that they may revoke the offers, parties will make more offers to settle. However, the approach is conjectural and unrealistic. A party contemplating making a statutory offer must be aware that the other party may accept the offer in which case, even under the majority view, it would be too late to withdraw. If the party is afraid that he will be locked in to his offer, he is not going to make it, and I do not believe that making the offer revocable will significantly encourage offers and increase settlements. Rather revocability, as occurs in this case, will frustrate would-be settlements.

The majority also urge that the policy of compensating injured parties is promoted by holding the statutory offer revocable. It is apparent that the policy is not served by today's majority holding because the majority have upset a settlement with the possibility that the injured plaintiffs will go uncompensated after trial. Settlements assure that injured plaintiffs will be compensated, and I fail to see how voiding settlements will increase the number of compensated plaintiffs when some no doubt will lose at trial.

The majority reason that contract law should control and that the general contract rule is that offers may be revoked prior to acceptance. In my view it is immaterial whether contract law applies. As pointed out above the language of the statute, historical considerations, prior authority, and sound public policy require that the statutory offer be irrevocable for the short period established by the statute. But even if we assume that contract law should apply, we would reach the same result.

It is true that as a general rule an offeror may revoke at any time prior to the communication of acceptance and that in the absence of consideration the offeror may revoke notwithstanding his promise that the offer will remain open for a specified time. (*Thomas* v. *Birch* (1918) 178 Cal. 483, 489 [173 P. 1102]; *Bellasi* v. *Shackelford* (1962) 201 Cal.App.2d 265, 267 [19 Cal.Rptr. 925]; 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 122, p. 122.) However, there is an equally well-settled exception to the general rule for options for consideration. (E.g., *Palo Alto Town & Country Village, Inc.* v. *BBTC Company* (1974) 11 Cal.3d 494, 502-503 [113 Cal.Rptr. 705, 521 P.2d 1097]; *Dawson* v. *Goff* (1954) 43 Cal.2d 310, 315 et seq. [273 P.2d 1]; *Warner Bros. Pictures* v. *Brodel* (1948) 31 Cal.2d 766, 772-773 [192 Cal.Rptr. 949, 3 A.L.R.2d 691]; 1 Witkin, *supra*,

§§ 122, 126-128, pp. 122, 124-126.) The consideration in the instant case for making an irrevocable offer open for the statutory period is conferred by the statute itself—by making the offer the offeror obtains a benefit, namely, costs in the event the offeree fails to obtain a more favorable judgment. (See *Mubi* v. *Broomfield, supra,* 492 P.2d 700, 702; *McVicar* v. *Keating, supra,* 19 App.Div. 581, 582.)

The majority do not dispute that there is sufficient consideration. Rather the majority position is that there is no irrevocable option because assertedly there is a lack of mutual assent in that plaintiffs when they made the offer did not know that the offer was irrevocable. However, this analysis ignores the facts that the offer is made pursuant to a statute and that the statute sets forth the term of the offer.

California follows the objective theory of mutual assent. The terms of the agreement are ordinarily established, not by the undisclosed intentions of the promisor, but by words or conduct justifying the promisee in understanding the promisor intended to make a promise. (E.g., *Horacek* v. *Smith* (1948) 33 Cal.2d 186, 193-194 [199 P.2d 929].) Any party is bound even if he misunderstood the terms of a contract and actually had a different undisclosed intention. (*Blumenfeld* v. *R. H. Macy & Co.* (1979) 92 Cal.App.3d 38, 46 [154 Cal.Rptr. 652].) The construction of the contract must be one that will make it reasonable, operative and lawful (Civ. Code, §§ 1643, 3541), the contract may be explained by references to the circumstances under which it was made (Civ. Code, § 1647, Code Civ. Proc., § 1860), and all applicable laws in existence become a part thereof as fully as if incorporated by reference (*Mulder* v. *Casho* (1964) 61 Cal.2d 633, 637 [394 P.2d 545]; 1 Witkin, *supra,* § 530, p. 452).

Plaintiffs could have made a settlement offer without regard to the statute. They chose, however, to make their offer under the statute; their obvious purpose was to secure the benefit of the cost provisions of the statute. As we have seen, to obtain those benefits the offer had to be left open for the statutory period. Implied in the agreement was the statutory provision that the offer would be deemed withdrawn in 30 days or at the commencement of trial, whichever occurs first. Under the objective theory of contracts, plaintiffs must be deemed to have intended that the offer of settlement would be open for the statutory period or until acceptance because only in this manner could they obtain the full benefits of their offer. To conclude that plaintiffs did not intend that the offer would run for the full statutory period is to attribute a secret intention which has never even been asserted.

In the absence of consideration plaintiffs could have revoked their offer no matter how long they expressly or impliedly stated it would remain open.

But, as we have seen, there was consideration, and plaintiffs should not be permitted to claim lack of mutual assent or to revoke in view of their implied representation.

I would issue a peremptory writ of mandate directing the superior court to vacate its order striking the acceptance and to grant the motion to enter judgment in accordance with the offer.

Mayer, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.