[Civ. No. 23318. Third Dist. Jan. 10, 1985.]

MAXINE DROUIN, Plaintiff and Respondent, v.
FLEETWOOD ENTERPRISES, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to rule 976.1 of the California Rules of Court, all portions of this opinion shall be published except part II of the Discussion.

**COUNSEL**

Gary L. Hall for Defendant and Appellant.

Donna S. Selnick and Ronald J. Richard for Plaintiff and Respondent.

OPINION

SIMS, J.—Plaintiff purchased a motor home manufactured by defendant Fleetwood Enterprises (Fleetwood).[1]

From the date of delivery, plaintiff encountered numerous problems with the motor home. It was returned for repairs to the dealer, the manufacturing plant in Pennsylvania, and various authorized facilities in several states.

Subsequently, some 3 months and less than 9,000 miles after purchase, while still under express warranties, the motor home broke down in Arizona. Fleetwood told plaintiff to take the motor home to Virginia to get it repaired. Fleetwood did not tell her how to get it there.

Plaintiff repaired to the courts to obtain justice. She got some in the trial court and will get some more here.

On July 16, 1980, plaintiff filed her third amended complaint naming as defendants, among others, General Motors Corporation (GM), General Electric Credit Corporation (GECC), and Fleetwood Enterprises, Inc. (Fleetwood).

Plaintiff's first cause of action alleged that defendants GM and Fleetwood breached implied warranties of merchantability and fitness for a particular purpose. Plaintiff's second cause of action alleged defendants wilfully breached express warranties to repair defects in material or workmanship.[2] Plaintiff's third cause of action alleged that the acts of defendants previously alleged entitled her to damages, including attorneys fees pursuant to specified provisions of the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act. (15 U.S.C. § 2301 et seq.) Plaintiff's fourth and fifth causes of action alleged that the motor home was, respectively, defectively and negligently manufactured. Plaintiff's sixth cause of action alleged that defendant promised to repair any defects in her vehicle with no intention to honor the promise. Plaintiff's seventh cause of action alleged Fleetwood intentionally misrepresented that it had, in fact, repaired plaintiff's vehicle. Plaintiff's eighth cause of action alleged Fleetwood negligently misrepresented that it had repaired her vehicle. Plaintiff's ninth cause of action stated a claim for rescission.

---

[1]This recitation is limited by the fact that defendant has failed to include in the record on appeal a reporter's transcript of any proceedings except of that hearing in which the trial court announced its decision regarding the unconscionability of defendant's warranty term limiting consequential and incidental damages. Additionally, defendant has failed to lodge any exhibits.

[2]Fleetwood's express warranty excluded the "automotive system" and GM's warranty was confined to the "truck and chassis."

On June 14, 1982, pursuant to Code of Civil Procedure section 998,[3] plaintiff personally served on Fleetwood's attorneys a written offer "to have judgment taken against [GM and Fleetwood] . . . for the sum of $25,001.00 which shall include plaintiff's attorneys' fees and costs."[4]

On July 14, 1982, GM filed with the court a notice of acceptance of plaintiff's offer. That notice provided: "NOTICE IS HEREBY GIVEN that defendants GENERAL MOTORS CORPORATION and FLEETWOOD ENTERPRISES, INC., accepts the offer made by plaintiff to have judgment taken against defendants [on the terms recited above. . . .]" The document filed by defendant did not include a proof of service upon plaintiff, and acceptance of the offer was not otherwise communicated to plaintiff. The notice was signed by GM's attorney but not by the attorney for Fleetwood. Despite the filing of the "Notice," Fleetwood continued to litigate by thereafter filing motions and responding to plaintiff's motions. On August 6, 1982, notice of acceptance was personally served upon plaintiff.

On August 9, 1982, plaintiff filed a motion to vacate judgment and rescind the offer to compromise. The motion included a declaration by plaintiff stating she never gave her permission for the settlement offer. Plaintiff's attorney declared she never received permission from plaintiff to make the offer and that she filed the offer at the insistence of newly retained cocounsel (no longer involved in these proceedings). She also declared that she believed GM and Fleetwood had indicated they had no intention of accepting the offer during certain oral discussions and, consequently, plaintiff's counsel did not endeavor formally to withdraw the offer before GM purportedly accepted it.

On August 16, 1982, the trial court granted plaintiff's motion to vacate judgment.[5] The court rejected plaintiff's claim that her counsel had no authority to make the offer but found that defendants rejected the offer and counteroffered at a settlement conference on June 14, 1982, the same day

---

[3]All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[4]Section 998 provides in pertinent part: "(a) The costs allowed under Section 1031 and 1032 shall be withheld or augmented as provided in this section.

"(b) Not less than 10 days prior to commencement of the trial as defined in subdivision 1 of Section 581, any party may serve an offer in writing upon any other party to the action to allow judgment to be taken in accordance with the terms and conditions stated at that time. If such offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge shall enter judgment accordingly. If such offer is not accepted prior to trial or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the trial."

[5]Actually, as the court noted, the clerk failed to enter judgment. The court assumed that the clerk should have entered judgment (see Civ. Code, § 3529) and granted plaintiff relief therefrom.

the offer was served. The court reasoned that ordinary contract principles established that the rejection and counteroffer acted to terminate the offer.

On June 24, 1982, judgment of dismissal as to GECC was entered pursuant to a settlement between the parties whereby GECC paid plaintiff $2,528.44. On December 8, 1982, judgment of dismissal was entered as to GM pursuant to a settlement agreement that GM pay plaintiff $25,000.[6]

Jury trial began January 19, 1983, with Fleetwood as the only defendant. On January 26, 1983, the trial court granted defendant's motion for nonsuit as to plaintiff's sixth and seventh causes of action, both based on actual fraud.

The jury returned its general verdict February 3, 1983. The jury found for plaintiff on a general verdict of $23,574.51. Pursuant to a special interrogatory, the jury found: "(In assessing that sum, we have found that 'consequential' damages—i.e., transportation to and from dealer to plant, loss of time, inconvenience, loss of use, towing charges, car rental and other incidental charges such as telephone calls, meals, and hotel bills, are in the amount of *$14,155.35* of that total.)"

The court also found defendant Fleetwood's express warranty exclusion of consequential damages to be unconscionable because the disclaimer was immediately followed by the sentence: "Some states do not allow the exclusion or limitation of incidental or consequential damages, so the above limitation or exclusion may not apply to you."[7] The court opined that the two provisions, taken together, were likely to confuse the ordinary consumer. The court also suggested a requirement that a purchaser of a motor home bear the expense of transporting an inoperable motor home from Arizona to Virginia in order to effect warranty repairs was unconscionable.

On appeal, defendant contends: (1) the court erred in refusing to enter judgment pursuant to Code of Civil Procedure section 998, subdivision (b); (2) the court erred in sustaining plaintiff's claim that defendant's contractual exclusion of consequential and incidental damages was unenforceable because of unconscionability (Civ. Code, § 1670.5); and (3) the court erred in awarding plaintiff attorneys fees. In an unpublished portion of this opinion, we conclude it is unnecessary to reach the merits of defendant's contention that the trial court erred in finding defendant's contractual limitation on damages unconscionable. In the published portion of this opinion, we

---

[6]Both parties agree that $18,000 was allocated to damages and $7,000 to attorneys fees.

[7]This familiar notice is required by federal regulations to be appended to certain written warranties of consumer products. (16 C.F.R. § 701.3(a)(8) (1978).)

reject defendant's other contentions of error; we therefore affirm and award plaintiff her reasonable attorneys fees on appeal.

DISCUSSION

I

Defendant contends the court erred in failing to enter judgment upon its purported acceptance of plaintiff's offer of compromise pursuant to section 998. The trial court ruled the offer was revoked by an oral counteroffer at a settlement conference. (See *T. M. Cobb Co.* v. *Superior Court* (1984) 36 Cal.3d 273 [204 Cal.Rptr. 143, 682 P.2d 338]; *Glende Motor Co.* v. *Superior Court* (1984) 159 Cal.App.3d 389, 398 [205 Cal.Rptr. 682] [offeree's power of acceptance revoked by counteroffer].)

At oral argument before this court, defendant argued for the first time that its counteroffer could not have acted to terminate plaintiff's offer because the counteroffer was not in writing. Defendant asks us to adopt a rule requiring counteroffers to be in writing to avoid confusion with respect to whether a section 998 offer is accepted.

█ We do not address this argument because, even assuming arguendo Fleetwood's capacity to accept plaintiff's section 998 offer was not terminated by its counteroffer, the section 998 offer was withdrawn by operation of law before it was accepted. Consequently, Fleetwood's counteroffer is ultimately immaterial.

Section 998, subdivision (b) provides in pertinent part: "If such offer is not accepted prior to trial or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn . . . ." (See fn. 4, *ante.*) This language plainly means that the offeree must accept the offer within the prescribed time. The statute also provides, "If such offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge shall enter judgment accordingly." (*Ibid.*) This language contemplates that there must be an acceptance and that *proof* of the acceptance must be filed in the action.

Unless section 998 requires a different rule, operation of section 998 is governed by principles of classic contract law. (*T. M. Cobb Co.* v. *Superior Court, supra,* 36 Cal.3d at p. 280.) It is, according to a hackneyed expression, hornbook law that an acceptance of an offer must be communicated to the offeror to become effective. (Civ. Code, § 1565; *Estate of Klauenberg* (1973) 32 Cal.App.3d 1067, 1070 [108 Cal.Rptr. 669]; *Coml. Cas. Ins. Co.* v. *Ind. Acc. Com.* (1953) 116 Cal.App.2d 901, 907 [254 P.2d 954]; 1

Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 139, p. 135.) The record in this case discloses that no acceptance of plaintiff's offer of June 14 was communicated to her within the 30-day limit. The "Notice of Acceptance" was not served on plaintiff until August 6, 1982, well beyond the statutory period. Because Fleetwood never communicated its acceptance of plaintiff's section 998 offer to plaintiff within the 30-day period, no valid acceptance was effected before the offer was withdrawn by operation of law.

We note that a contrary conclusion—allowing acceptance of a section 998 offer without communication to the offeror—would often result in a waste of time, effort, and costs. Indeed, that is precisely what happened here: despite the filing in the action of the "notice of acceptance" on July 14, the parties continued to litigate until the purported acceptance was served on plaintiff on August 6. Had the "notice of acceptance" been effective as an acceptance, this litigation effort would have occurred after the effective settlement of the case and, therefore, would have been futile.

II*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

III

Defendant contends the court erred in awarding plaintiff attorney's fees pursuant to 15 United States Code section 2310(d)(2).[9]

Defendant first argues that the trial court erred in not apportioning the fees award between plaintiff's causes of action pursuant to the Magnuson-Moss Warranty Act, which provides for attorneys fees, and her remaining causes of action for which no authority existed for an award of attorneys fees.

---

*See footnote, *ante,* page 486.

[9]15 United States Code section 2310(d) provides, in pertinent part: "(d)(1) Subject [to exceptions not here relevant], a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief—

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(2) If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate."

Attorneys fees need not be apportioned between distinct causes of action where plaintiff's various claims involve a common core of facts or are based on related legal theories. (*Hensley* v. *Eckerhart* (1983) 461 U.S. 424, 434-435 [76 L.Ed.2d 40, 51, 103 S.Ct. 1933]; *Reynolds Metals Co.* v. *Alperson* (1979) 25 Cal.3d 124, 129-130 [158 Cal.Rptr. 1, 599 P.2d 83]; *Fed-Mart Corp.* v. *Pell Enterprises, Inc.* (1980) 111 Cal.App.3d 215, 227-228 [168 Cal.Rptr. 525].)

Plaintiff's complaint clearly discloses that all of her causes of action were related to her purchase of the motor home from defendant and her subsequent efforts to obtain repairs of its defects. The trial court apparently determined that plaintiff's causes of actions were factually intertwined in light of its express reference to *Reynolds Metals Co.* v. *Alperson, supra,* 25 Cal.3d 124, in its amended statement of decision. Without a reporter's transcript, we are required to presume that the evidence adduced at trial and at posttrial proceedings supports the trial court's determination.[10] We find no error.

Defendant also argues that the amount of attorneys fees awarded by the court is excessive when compared to plaintiff's recovery. Title 15 United States Code section 2310(d)(2), clearly provides that attorneys fees be calculated upon "actual time expended." The Senate Report concerning this language makes its purpose clear: "It should be noted that an attorney's fee is to be based upon actual time expended rather than being tied to any percentage of the recovery. This requirement is designed to make the pursuit of consumer rights involving inexpensive consumer products economically feasible." (Sen. Rep. No. 93-151, 1st Sess., pp. 23-24 (1973).) We believe this rationale applies with equal force to purchases of products which may not be "inexpensive." The trial court did not err in calculating attorneys fees based on actual time expended.

Defendant concedes that if plaintiff prevails on this appeal, she is entitled under the Magnuson-Moss Warranty Act to reasonable attorneys fees incurred on appeal. Plaintiff has prevailed. On remand the trial court shall award plaintiff reasonable attorneys fees incurred on appeal. (See *Serrano* v. *Unruh* (1982) 32 Cal.3d 621, 637 [186 Cal.Rptr. 754, 652 P.2d 985].)

---

[10]We are not entirely certain that the trial court did not engage in some degree of apportionment. The trial court did not award plaintiff the entire amount of attorneys fees she claimed. The last paragraph of the court's original statement of decision, incorporated into its amended statement of decision, includes the following observation: "[The court] is not convinced that any assessment it makes as to reasonable fees to be charged against the opposing party is, *per se,* an abuse of discretion if it falls at all short of the dollar equivalent of actual hours claimed; especially where, as here, Magnuson-Moss was not the sole arrow in plaintiff's quiver."

## DISPOSITION

The judgment is affirmed. The matter is remanded to the trial court to determine reasonable attorneys fees incurred by plaintiff on appeal and to order defendant to pay the same. Plaintiff is awarded her costs of suit on appeal.

Puglia, P. J., and Robie, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.