Filed 7/7/22  Engage BDR v. Amobee CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ENGAGE BDR, LLC, | B309263 |
| Plaintiff and Appellant, | Los Angeles County |
| v. | Super. Ct. No. 19SMCV01261 |
| AMOBEE, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Harry Jay Ford, III, Judge.  Affirmed.

Bushell Law, Daniel A. Bushell; The Law Office of Thad M. Scroggins and Thad M. Scroggins for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, Martin D. Katz and Bridget J. Russell for Defendant and Respondent.

_____

The trial court correctly awarded the contractual attorney fees at issue.

A firm called Engage BDR, LLC entered a Master Agreement requiring it to remit payments to Amobee, Inc. When Engage repeatedly failed to pay, the parties entered a succession of five more agreements that gave Engage more time to pay but increased its debt to Amobee. Engage paid most of what it owed but then sued Amobee, claiming Amobee breached the Master Agreement and used the follow-on agreements to charge usurious interest rates. Engage maintained it was entitled to rescind the later agreements because it entered them only under financial duress.

The trial court sustained Amobee's demurrers and granted it attorney fees. In 2021, we affirmed the court's judgment on the demurrers. (*Engage BDR, LLC v. Amobee, Inc.* (July 15, 2021, B305770) [nonpub. opn.].) Now we confront Engage's separate attack on the fees award to Amobee. This attack fails. Engage sued Amobee on contracts containing attorney fees provisions. Civil Code section 1717 makes these provisions reciprocal as well as broad in scope. By suing on these contracts, Engage assumed the burden of paying Amobee's attorney fees if Amobee prevailed, which it has. We again affirm.

I

A series of six sequential agreements comprise this case. We label these six as follows:

1. the Master Agreement,
2. the Agreement,
3. the Amendment,
4. the Settlement,
5. the Stipulated Judgment, and

2

6. the Forbearance Agreement.

Under the Master Agreement, Engage was to sell Amobee's advertising space to advertisers, earn a commission, and pay Amobee the balance it invoiced from advertisers. The Master Agreement contained a limited attorney fees provision. Engage would pay attorney fees Amobee incurred in collecting undisputed amounts that were over 30 days past due. The Master Agreement did not say whether counsel represented the parties, which is a recitation Civil Code section 1717 makes significant, as we shall explain.

When Engage failed to remit nearly $850,000, the parties entered the Agreement for Engage to pay its balance. This was their second contract. If a party breached the Agreement, the Agreement provided attorney fees for the "prevailing party," "in accordance with" the Master Agreement's provision. The Agreement noted the parties had the "opportunity to consult their attorneys."

Engage still did not pay in full. The parties entered an Amendment to the Agreement that kept the Agreement intact but altered its deadlines and the amounts due. The Amendment did not say counsel represented the parties. Engage lacked counsel, according to the pleadings in its later lawsuit.

Amobee then sued to enforce the Amendment. The parties resolved this lawsuit by entering a Settlement and a related Stipulated Judgment. The Settlement specified the parties were "represented by counsel" and contained a mutual general release of claims. Under the Stipulated Judgment, the parties, with counsel, agreed the court could enter judgment in accordance with the Settlement.

3

Last came the Forbearance Agreement, which was silent about attorney fees and about representation.

After Engage satisfied the agreements, less one contested payment, Engage sued Amobee. Engage filed a complaint and two amended complaints. Engage attached the agreements to its complaints and sought attorney fees for all causes of action.

The pleadings are pertinent to this attorney fees case. We detail them.

The complaint alleged six causes of action that fit into four categories.

The first category is breach of contract and a related breach of the implied covenant of good faith and fair dealing. These claims were about Amobee's alleged breach of a term in the Master Agreement that capped liability at $1 million.

Second is usury and unjust enrichment from usury. Engage alleged the increase in payment amounts in the Agreement and Amendment constituted usurious interest rates.

Third is economic duress. Engage alleged it had been suffering financial difficulties and Amobee wrongfully coerced it to enter the Amendment, Settlement, Stipulated Judgment, and Forbearance Agreement.

Fourth was declaratory relief, which alleged a controversy about "the agreements."

Engage's *first* amended complaint largely mirrored the complaint. It added allegations about the Settlement to the usury claims. It renamed the unjust enrichment claim "Restitution" but the underlying basis for the claim—unjust enrichment due to usury—remained. Engage deleted its economic duress cause of action.

4

Engage styled its *second* amended complaint as a request for declaratory relief. It alleged economic duress and undue influence when it entered the Amendment, Settlement, Stipulated Judgment, and Forbearance Agreement. It sought to rescind these four agreements.

The trial court sustained demurrers and entered judgment in Amobee's favor. It awarded Amobee attorney fees of about $125,000 and declined to apportion the fees. Engage appeals this fees award.

## II

The fees award was proper.

We review an award of attorney fees for an abuse of discretion, but we independently review its legal basis. (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751.)

We begin by explaining why Civil Code section 1717 applies to Engage's pleadings and to the fees provisions in the agreements. Then we explain why the size of the fees is reasonable. Undesignated statutory citations are to the Civil Code.

## A

Under the American rule, each party bears its own attorney fees. The Legislature codified this rule in Code of Civil Procedure section 1021. (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 607, fn. 4 (*Santisas*).) Absent a conflicting statute, parties are free to allocate attorney fees by contract. (Code Civ. Proc., § 1021.) To ensure these contractual provisions are not unfairly one-sided, the Legislature enacted section 1717. (*Santisas*, at p. 602.)

Section 1717, subdivision (a) provides: "In any action on a contract, where the contract specifically provides that attorney's

5

fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees . . . . [¶] Where a contract provides for attorney's fees, as set forth above, that provision shall be construed as applying to the entire contract, unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract."

We restate and summarize: section 1717 can expand a contract's attorney fees provision in two pertinent ways. The first way is reciprocity: a unilateral attorney fees clause applies to both parties. The second way is broadened scope: a narrow attorney fees clause applies to the entire contract, *unless* the contract specified that counsel represented the parties. This is the contractual recitation we mentioned earlier. With the recitation, the statute permits the fees provision to be narrow. When the contract lacks the recitation, however, the statute broadens the fees provision.

Further, an action is "on a contract" under section 1717 if it (1) "involves" an agreement, meaning it arises out of or relates to an agreement by, for example, seeking to interpret its terms or to determine a party's rights under the agreement; and (2) the agreement has an attorney fees clause. (*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 242.)

We take these two requirements in turn. Then we address apportionment.

6

1

First, we determine which claims were "on a contract" and, if any were, to which contract or contracts they related. We examine Engage's pleadings to make this determination. (See *Hyduke's Valley Motors v. Lobel Financial Corp.* (2010) 189 Cal.App.4th 430, 435 [consider pleaded theories of recovery to identify legal basis of prevailing party's recovery].)

This analysis is straightforward.

The breach of contract and breach of implied covenants claims were on the Master Agreement. Engage asserted Amobee breached a term of that agreement and it sought to enforce its rights under that term. The breach claims were therefore on the Master Agreement.

The usury, unjust enrichment from usury, and related restitution claims were on the Agreement, the Amendment, and the Settlement. (See *Winnett v. Roberts* (1986) 179 Cal.App.3d 909, 923 [party attacking promissory note as usurious may rely on note's attorney fees provision as basis for fees]; *Del Mar v. Caspe* (1990) 222 Cal.App.3d 1316, 1335 [same; resolution of usury claim necessarily involved determination of validity of interest provisions in note].)

The economic duress claim was on the Amendment, the Settlement, the Stipulated Judgment, and the Forbearance Agreement. Because Engage challenged its duties under these contracts based on the alleged duress, its action was on these contracts.

The declaratory relief claims were on all the agreements. Engage first sought a general declaration of rights based on them. Later, it alleged economic duress and undue influence when it entered the Agreement, the Amendment, the Settlement,

7

and the Forbearance Agreement.  Engage sought a declaratory judgment to rescind these four contracts.  By seeking to establish the parties' rights under contracts, these claims were on these agreements for the purpose of entitlement to attorney fees.  (See, e.g., *City and County of San Francisco v. Union Pacific Railroad Co.* (1996) 50 Cal.App.4th 987, 999–1000.)

Each cause of action thus was on a contract.  This is the first step in our inquiry.  Next we must turn to the string of contracts in this case to determine which ones had attorney fees provisions of binding relevance.

2

The first three agreements contained reciprocal and expansive attorney fees provisions that entitled Amobee to attorney fees.

Amobee is entitled to attorney fees for claims on the Master Agreement.  Section 1717 makes the Master Agreement's attorney fees provision reciprocal.  Because the Master Agreement did not recite that counsel represented the parties, section 1717 also broadens the scope of this provision to the entire contract.  Amobee thus gained the right to recover its attorney fees for defending causes of action on the Master Agreement.

Amobee is also entitled to attorney fees for claims on the Agreement and the Amendment.  Neither agreement recited that counsel represented the parties.  The Agreement incorporated the Master Agreement's attorney fees provision.  The Amendment changed the deadlines and payment amounts but otherwise maintained the provisions of the Agreement.  Therefore the fees provision in the Agreement applies equally to the Amendment.

8

Amobee earned attorney fees for defending causes of action on the Agreement and the Amendment.

Engage incorrectly contends the broadened scope portion of section 1717 does not apply because the Agreement's "opportunity to consult" language means the parties *were* represented by attorneys. Engage's reading of the contract is improperly imprecise. The broadened scope portion of section 1717 introduces an additional level of mutuality to the statute. It furthers a notion of equity into situations of seemingly unequal bargaining power. Parties of roughly equal power may, with their lawyers' help, draft their way around this part of the statute by specifying in the contract the fact of "representation." To open this escape hatch, counseled parties must comply with the statute's literal requirements to instantiate their legal sophistication.

We ascribe meaning to the absence of language about *representation* in the Agreement in part because the parties deployed that language in a different agreement. The Settlement said they were "represented by counsel." Thus the parties knew how to use the exact language the statute required and did so when they were lawyered up for the settlement. The inexact language in the Agreement does not satisfy the statute.

Engage cites *International Billing Services, Inc. v. Emigh* (2000) 84 Cal.App.4th 1175, but that case does not control. There, a company and its employees entered a contract in which the employees promised to "reimburse" the company for legal fees in certain circumstances. After the company sued the employees and lost, it tried to dodge attorney fees by arguing section 1717 did not apply because the contract lacked the statute's exact words "attorney's fees" and "incurred to enforce" a contract. (*Id.*

9

at pp. 1179–1180, 1182–1184.) The court explained section 1717 did not require form language to create an *attorney fees provision* and held the agreement's language sufficed. (*Id.* at pp. 1183–1184.)

The issue in the present case—of specifying the fact of representation—is a different matter from the issue in *International Billing Services.* And in that case, liberally construing language that created a reciprocal fees provision aligned to section 1717's purpose of mutuality. The same is not true for specifying representation because that would *limit* section 1717's reach.

Amobee thus earned attorney fees for defending causes of action on the Master Agreement, Agreement, and Amendment. The remaining agreements lacked attorney fees provisions.

Engage argues against the fees award because it says it would not have earned fees if it had won. This argument is incorrect. Engage sued on contracts with attorney fees clauses, sought fees in its pleadings, and *would* have been entitled to fees. A plaintiff's bare allegation of entitlement to fees, alone, may be insufficient to award fees in favor of a prevailing defendant. (See *Leach v. Home Savings and Loan Assn.* (1986) 185 Cal.App.3d 1295, 1307.) A prevailing defendant, however, need not pursue a minitrial to establish the merit of a losing plaintiff's hypothetical fees claim. (*Linear Technology Corp. v. Tokyo Electron Ltd.* (2011) 200 Cal.App.4th 1527, 1538.) The difficulty in creating a counterfactual where the plaintiff won and determining with exactitude its hypothetical entitlement to fees is apparent in cases like Engage's, where the plaintiff pleaded several interconnected causes of action across multiple complaints. We therefore apply Engage's pleadings at a broad level to consider

10

whether it would have been entitled to fees had it won.  We conclude it would have been so entitled.

Engage's main argument about why it would not have been entitled to fees involves the Settlement's waiver, but this waiver would not have foreclosed attorney fees under Engage's pleaded theories.  Engage says its pleadings "acknowledged" it entered later agreements, including the Settlement.  But Engage said it entered the Settlement under duress and sought to rescind it. Had Engage won on this issue, the rescinded agreement's waiver would not have been a barrier to fees.

Engage incorrectly contests the fees award as inequitable. This fees award, however, comports with section 1717 and the cases interpreting it.  When a party litigant prevails in an action on a contract by establishing the contract is inapplicable or unenforceable, section 1717 permits the party's recovery of attorney fees whenever the opposing party would have been entitled to attorney fees under the contract had it prevailed. (*Santisas*, *supra*, 17 Cal.4th at p. 611.)  Amobee successfully argued the Master Agreement did not control, for example, but this rule still allows it to collect fees under that agreement.

*Brittalia Ventures v. Stuke Nursery Co., Inc.* (2007) 153 Cal.App.4th 17 does not help Engage.  There the plaintiff, a walnut farmer, *prevailed* in his contract action against a supplier. The plaintiff was not entitled to attorney fees under section 1717 because the contract on which he sued did *not* contain an attorney fees clause.  (*Id.* at pp. 20–23, 30–31.)  As we have explained, Engage sued on contracts *with* attorney fees clauses. Furthermore, *Brittalia* considered equitable principles that do not weigh in Engage's favor.  Our reasoning for affirming the fees relies on *Engage*'s theories and the contracts *Engage* attached to

11

its complaints.  Engage now must bear the consequence of its loss by paying Amobee's fees.

3

The court's refusal to apportion fees was proper.  Trial courts are in the best position to resolve this issue.  (*Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525, 556.)

Although section 1717 attorney fees pertain only to fees incurred to litigate applicable contract claims (*Santisas, supra*, 17 Cal.4th at p. 615), attorney fees need not be apportioned where causes of action in which fees are proper do share common issues with causes of action in which fees are not allowed.  (See *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129–130; *Drouin v. Fleetwood Enterprises* (1985) 163 Cal.App.3d 486, 493 [apportionment unnecessary where claims involve "common core of facts or are based on related legal theories"].)  This rule applies where claims for relief are so intertwined that it would be impractical or impossible to separate the attorney's time into compensable and noncompensable units.  (*Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 687.)

Engage's causes of action each involved the Master Agreement, the Agreement, or the Amendment.  Some involved more than one of those agreements.  To the extent Engage's claims involved the later agreements that lacked an attorney fees clause, the factual and legal issues were common with the former agreements.  The trial court acted within its discretion in declining to apportion fees.

B

The court did not abuse its discretion in setting the amount of the fees.  It properly concluded Amobee's request was

12

reasonable given the three versions of the complaint, the two rounds of demurrers, and the complex factual and legal issues.

Engage says Amobee's fees request had duplicative entries, but Engage forfeited this argument by failing to support it with facts in the trial court.  In less than one full page of argument, Engage's opposition to Amobee's fees request said the fees were unreasonable because the case was neither novel nor complex and "there appears to be duplicative efforts by defense counsel." The trial court noted Engage failed to identify specific time or work that was improper or excessive.  Engage later identified time entries in a supplemental brief, but the trial court had not authorized additional briefing on this point.  Engage raises these belated arguments again on appeal without an explanation for its delay in the trial court.  The court did not abuse its discretion by declining to consider Engage's late and unauthorized briefing on this matter.

## DISPOSITION

We affirm the order granting the attorney fees and award costs to Amobee, Inc.


WILEY, J.


We concur:



STRATTON, P. J.          HARUTUNIAN, J.*

---

*       Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.