# IN THE SUPREME COURT OF CALIFORNIA

OSCAR J. MADRIGAL et al.,
Plaintiffs and Respondents,

v.

HYUNDAI MOTOR AMERICA,
Defendant and Appellant.

S280598

Third Appellate District
C090463

Placer County Superior Court
S-CV-0038395

March 20, 2025

Justice Corrigan authored the opinion of the Court, in which Chief Justice Guerrero and Justices Liu, Kruger, Groban, Jenkins, and Evans concurred.

MADRIGAL v. HYUNDAI MOTOR AMERICA

S280598

Opinion of the Court by Corrigan, J.

The general cost recovery rule in California entitles the prevailing party in a civil action or proceeding to recover its litigation costs as a matter of right.  Code of Civil Procedure section 1032 sets out the rule and defines who qualifies as a "prevailing party."[1]  (§ 1032, subds. (a)(4), (b).)  Section 1033.5 identifies the items allowable as costs, which include attorney fees when authorized by statute.  (§ 1033.5, subd. (a)(10)(B).)

Section 998 modifies section 1032's general rule.  To encourage the settlement of cases before trial, section 998 shifts the liability for costs under some circumstances.  As relevant here, when a plaintiff rejects or fails to timely accept a qualifying defense offer (998 offer), and then "fails to obtain a more favorable judgment or award," the plaintiff is not entitled to its postoffer litigation costs and must pay some or all of the defendant's postoffer costs.  (§ 998, subd. (c)(1).)

The specific question here is a narrow one.  Does a plaintiff who has rejected a 998 offer or allowed it to be deemed withdrawn for want of timely acceptance, but later agrees to settle before trial, *necessarily* avoid the postoffer cost-shifting effects of section 998?  We hold that a plaintiff does not necessarily avoid section 998's reach in this scenario.  Rather,

---

[1]     All undesignated statutory references are to the Code of Civil Procedure.

section 998 sets out the default rule, imposing cost shifting whenever its terms are met. However, the parties remain free to agree to their own allocation of costs and fees as part of the settlement agreement.

## I. BACKGROUND

In 2011, Oscar and Audrey Madrigal (plaintiffs) bought a car from Hyundai Motor America (defendant) for $24,172.73. The car allegedly did not operate as warranted, and repeated repair attempts proved unsuccessful. Plaintiffs requested that defendant buy the car back, relying on remedies available under the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.; the Act or Song-Beverly Act).[2] When defendant refused, plaintiffs sued for violations of the Act.

Less than two months after the complaint was filed, defendant made its first 998 offer. It offered to pay either the amount plaintiffs paid for the car, plus expenses incurred, or a fixed amount of $37,396.60. As to attorney fees, it offered to pay either $5,000 or an amount to be determined by the trial court upon a motion. Plaintiffs did not accept the offer within 30 days, and it was "deemed withdrawn" as the statute provides. (§ 998, subd. (b)(2).)

Six months later, defendant made a second 998 offer. This time, defendant proposed to reimburse the purchase price plus

---

[2] The Song-Beverly Act imposes an "obligation" on a car manufacturer "to 'promptly' repurchase or replace a defective vehicle it is unable to repair." (*Kirzhner v. Mercedes-Benz USA, LLC* (2020) 9 Cal.5th 966, 971 (*Kirzhner*).) The buyer may "elect restitution in lieu of replacement, and in no event shall the buyer be required by the manufacturer to accept a replacement vehicle." (Civ. Code, § 1793.2, subd. (d)(2).)

expenses, or a fixed amount of $55,556.70. Again, it offered to pay attorney fees of $5,000 or an amount to be awarded by the court. Plaintiffs let the second offer expire as well.

On the first day set for trial, some 18 months after the second offer had expired, the parties argued pretrial motions. Plaintiffs requested tentative rulings on two defense motions to exclude evidence and preclude recovery of certain types of damages. The court tentatively granted both defense motions and took a recess. Thereafter, the parties reported that they had reached a settlement, which was orally placed on the record pursuant to section 664.6.[3]

The terms of the settlement were these: (1) defendant would pay plaintiffs $39,000; (2) there would be no surrender of the car because plaintiffs no longer owned it; (3) plaintiffs would release defendant and the selling dealership from any claims arising from the sale of the car or the repairs done on it; (4) plaintiffs could seek their costs and attorney fees by motion; and

---

[3] Section 664.6 "provides a summary procedure to enforce a settlement agreement by entering judgment pursuant to the terms of the settlement. [Citation.] [It] states that if the parties to pending litigation enter into a settlement either in a writing signed by the parties or orally before the court, the court, upon a motion, may enter judgment pursuant to the terms of the settlement. The court retains jurisdiction to enforce a settlement under the statute even after a dismissal, but only if the parties requested such a retention of jurisdiction before the dismissal." (*Hines v. Lukes* (2008) 167 Cal.App.4th 1174, 1182, fn. omitted.) Before section 664.6 was enacted, if one party to a settlement agreement failed to perform one of its obligations, the party seeking to enforce the agreement often had to file a separate lawsuit for breach of the settlement agreement. Section 664.6 offers a more efficient alternative procedure for resolution of disputes that arise over settlement agreements.

(5) plaintiffs would dismiss their complaint with prejudice after payment of the $39,000 settlement amount, along with any costs awarded by the court. The court confirmed the terms of the agreement, then scheduled a hearing on the costs motion and an order to show cause hearing regarding dismissal. During the settlement colloquy, there was no mention of section 998 or its possible effect on cost recovery in light of the unaccepted settlement offers. Nor did either party offer or reserve any argument that might be made during the hearing on costs.

Plaintiffs moved to recover their costs as the prevailing party under section 1032 and the Act.[4] They sought $207,438.75 in attorney fees and $20,865.83 in other costs.[5] Defendant moved to strike or tax plaintiffs' claimed costs. It argued that plaintiffs could not recover any costs incurred after the date of the second 998 offer because they ultimately agreed to settle for

---

[4] Section 1032 provides: "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (§ 1032, subd. (b).) The " '[p]revailing party' " is "the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, . . . a defendant as against those plaintiffs who do not recover any relief against that defendant," or, in other situations, the party the court determines to be the prevailing party. (§ 1032, subd. (a)(4).) Section 1033.5 sets out the items "allowable as costs under Section 1032." (§ 1033.5, subd. (a).) Those items include attorney fees, when authorized by statute. (§ 1033.5, subd. (a)(10)(B).) The Song-Beverly Act authorizes a court to award "attorney's fees based on actual time expended" to a prevailing buyer in an action which, like this one, is brought under Civil Code section 1794, subdivision (a). (Civ. Code, § 1794, subd. (d).)

[5] The attorney fee request included $138,292.50 in base fees plus a 0.5 lodestar enhancement of $69,146.25.

a payment that was $16,000 less than the fixed amount in the offer. As a result, they had failed to obtain a more favorable judgment. Under the defense's analysis, plaintiffs' cost award "should be no more than $622.95." Defendant also asked the court to tax plaintiffs' costs and fees as unreasonable and unnecessarily incurred.

The trial court rejected defendant's section 998 arguments. It reasoned that "the parties settled the case prior to trial, and as there was no trial, no judgment or award was rendered. Accordingly, Code of Civil Procedure section 998 does not apply." The court did, however, tax plaintiffs' claimed costs. The court observed that, during the litigation, plaintiffs had engaged three different law firms and were represented by 16 different attorneys. The documents presented in support of plaintiffs' motion reflected "numerous instances of duplicative billing" and billing for unnecessary tasks. The case "did not involve overly complex issues" or "unique procedural demands." The law firms involved had "tried multiple cases against one another," each following "[t]he same basic motions in limine, exhibit lists, and other pleadings." The court awarded plaintiffs $84,742.50 in attorney fees and $17,681.05 in other costs.

The Court of Appeal reversed in a split decision.[6] The majority concluded that section 998 cost shifting applied to the question of recoverable costs and remanded for the court to "consider the parties' arguments regarding the validity of

---

[6]  The Court of Appeal first concluded that the trial court's ruling on costs and fees was appealable under the collateral order doctrine. (*Madrigal v. Hyundai Motor America* (2023) 90 Cal.App.5th 385, 394–396.; *id.* at p. 410 (dis. opn. of Robie, P. J.).) Neither party challenges that conclusion here.

[defendant's second 998] offer, whether the offer was more favorable than the judgment obtained by plaintiff, and any other arguments that may flow from the application of section 998." The dissent would have held that section 998 cost shifting does not apply when the parties enter into a settlement agreement before the case proceeds to trial but after the last section 998 offer is rejected or deemed withdrawn.

## II. DISCUSSION

Whether section 998 cost shifting applies here is a question of statutory interpretation, reviewed de novo. When interpreting a statute, " '[w]e first examine the statutory language, giving it a plain and commonsense meaning.' [Citation.] We do not consider statutory language in isolation; instead, we examine the entire statute to construe the words in context. [Citation.] If the language is unambiguous, 'then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.' [Citation.] 'If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' " (*Kirzhner, supra*, 9 Cal.5th at p. 972.)

*A. Recovery of Costs*

The right to recover costs in litigation " 'exists solely by virtue of statute.' " (*Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 989, quoting *Estate of Johnson* (1926) 198 Cal. 469, 471.) The general rule, as mentioned above, is that the prevailing party is entitled to recover its litigation costs. (§ 1032; *DeSaulles v. Community Hospital of Monterey Peninsula* (2016) 62 Cal.4th 1140, 1147 (*DeSaulles*).) Section 998 "modifies the general rule of section 1032 that only the

prevailing party recovers its costs." (*Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1112 (*Scott*).)

Section 998, subdivision (a) (section 998(a)) provides that the "costs allowed" under section 1032 "shall be withheld or augmented as provided in this section." Section 998, subdivision (b) (section 998(b)) sets out the requirements for making and accepting an offer. As pertinent here, section 998(b) provides that if an offer "is not accepted prior to trial or arbitration or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the trial or arbitration."[7] (§ 998, subd. (b)(2).) Section 998,

---

[7] Section 998(b) reads: "Not less than 10 days prior to commencement of trial or arbitration (as provided in Section 1281 or 1295) of a dispute to be resolved by arbitration, any party may serve an offer in writing upon any other party to the action to allow judgment to be taken or an award to be entered in accordance with the terms and conditions stated at that time. The written offer shall include a statement of the offer, containing the terms and conditions of the judgment or award, and a provision that allows the accepting party to indicate acceptance of the offer by signing a statement that the offer is accepted. Any acceptance of the offer, whether made on the document containing the offer or on a separate document of acceptance, shall be in writing and shall be signed by counsel for the accepting party or, if not represented by counsel, by the accepting party. [¶] (1) If the offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge shall enter judgment accordingly. In the case of an arbitration, the offer with proof of acceptance shall be filed with the arbitrator or arbitrators who shall promptly render an award accordingly. [¶] (2) If the offer is not accepted prior to trial or arbitration or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the trial or arbitration. [¶] (3) For purposes of this subdivision, a

subdivisions (c) and (e) address what happens if a defendant makes an offer, which is rejected or deemed withdrawn, and "the plaintiff fails to obtain a more favorable judgment or award." Under those circumstances, the plaintiff "shall not recover . . . postoffer costs," "shall pay the defendant's costs from the time of the offer," and may be required to pay some postoffer expert witness costs. (§ 998, subd. (c)(1).) The costs awarded under section 998 "shall be deducted from any damages awarded in favor of the plaintiff"; and, "[i]f the costs awarded under [section 998] exceed the amount of the damages awarded to the plaintiff the net amount shall be awarded to the defendant and judgment or award shall be entered accordingly." (§ 998, subd. (e).)[8]

The clear policy behind section 998 is to encourage the settlement of lawsuits before trial. (*Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1019 (*Martinez*); *Bank of San Pedro v. Superior Court* (1992) 3 Cal.4th 797, 804 (*Bank of San Pedro*), superseded on other grounds by statute as stated in *Quiles v. Parent* (2017) 10 Cal.App.5th 130, 144.) It does so "by providing a strong financial disincentive to a party — whether it be a plaintiff or a defendant — who fails to achieve a better result than that party could have achieved by accepting

---

trial or arbitration shall be deemed to be actually commenced at the beginning of the opening statement of the plaintiff or counsel, or, if there is no opening statement, at the time of the administering of the oath or affirmation to the first witness, or the introduction of any evidence."

[8] Section 998, subdivision (d), addresses what happens if a plaintiff makes a section 998 offer, the offer is not accepted, and "the defendant fails to obtain a more favorable judgment or award." Under those circumstances, the defendant may be required to pay a reasonable amount to cover the plaintiff's postoffer expert witness costs. (§ 998, subd. (d).)

his or her opponent's settlement offer. (This is the stick. The carrot is that by awarding costs to the putative settler the statute provides a financial incentive to make reasonable settlement offers.)" (*Bank of San Pedro*, at p. 804.) "The basic premise of section 998 is that plaintiffs who reject reasonable settlement offers and then obtain less than the offer should be penalized for continuing the litigation." (*Meister v. Regents of University of California* (1998) 67 Cal.App.4th 437, 450.) Or, as we have explained, to encourage both the making and acceptance of reasonable offers, section 998 treats even a losing defendant "whose settlement offer exceeds the judgment . . . *as if* it were the prevailing party" for purposes of postoffer costs. (*Scott*, *supra*, 20 Cal.4th at p. 1114.)

### B. Analysis

Defendant made two section 998 offers that were deemed withdrawn for nonacceptance. These facts bring section 998, subdivision (c)(1) (section 998(c)(1)) into play.

The trial court held that provision does not operate to shift costs if the parties ultimately settle before trial but do so after a section 998 offer has been rejected or deemed withdrawn. It reasoned that, because there was no trial, no "judgment . . . was rendered." Under the trial court's analysis, cost shifting is only required if a plaintiff rejects a 998 offer and then *takes the case to trial* and obtains a less favorable judgment. In other words, cases that settle before trial, but after a section 998 offer is rejected or deemed withdrawn, would not fall within the cost-shifting scheme. The Court of Appeal majority was correct to reject this construction.

### 1. *Cost Shifting Under Section 998 Is Not Limited to Cases Resolved by Trial or Arbitration*

To begin with, the terms of section 998(a) are clear and mandatory. Costs generally allowable under section 1032 "shall be withheld or augmented" as the statute provides. (§ 998(a).) This straightforward directive requires that the court adjust generally recoverable costs if section 998's conditions are met. Nowhere does section 998(a) require that the case be resolved *by trial* before it comes into play. Nor does it exclude from its reach cases resolved by a postrejection, but pretrial, settlement.

In support of its conclusion, the trial court relied on the statutory language mandating cost shifting if "the plaintiff fails to obtain a more favorable judgment or award." (§ 998(c)(1).) According to the trial court, because there was no trial, no "judgment . . . was rendered." There are several flaws in the trial court's reading of the statute.

First, it read section 998(c)(1) too narrowly. The section does not say that a plaintiff who rejects a valid settlement offer is subject to cost shifting only if it subsequently obtains a less favorable *judgment after trial*. "A plaintiff may fail to obtain a more favorable judgment or award by failing to obtain any award at all, as in the case of voluntary dismissal." (*Mon Chong Loong Trading Corp. v. Superior Court* (2013) 218 Cal.App.4th 87, 94; accord Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2024) ¶ 12:663 ["A dismissal constitutes a failure to obtain a judgment more favorable than a rejected § 998 offer and thus triggers cost-shifting under § 998"].) Failure in this context simply means the rejecting offeree does not obtain a more favorable judgment after rejecting a statutory offer. Section 998(c)(1) thus places the task of obtaining a more favorable judgment on a plaintiff who does

10

not accept a valid 998 offer. It requires cost shifting if the plaintiff does not do so. There is no requirement in the statute that the case be resolved *by trial* in order to penalize a nonaccepting offeree for continuing the case after a superior offer was properly made.

Moreover, section 998(c)(1) speaks only of a "judgment," not a judgment obtained in any particular manner. By its terms, section 998(b) points to a broad interpretation of the term "judgment." It provides that a valid, statutory settlement offer must "allow judgment to be taken" (§ 998(b)) and states that "[i]f the offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge *shall enter judgment* accordingly" (§ 998, subd. (b)(1), italics added). That formulation establishes that an accepted section 998 offer results in entry of a "judgment" resulting from a settlement, not a trial. "We generally presume that when the Legislature uses a word or phrase 'in a particular sense in one part of a statute,' the word or phrase should be understood to carry the same meaning when it arises elsewhere in that statutory scheme." (*Winn v. Pioneer Medical Group, Inc.* (2016) 63 Cal.4th 148, 161, quoting *People v. Dillon* (1983) 34 Cal.3d 441, 468.) In section 998(b), the Legislature contemplated that a "judgment" might result from a settlement agreement between the parties. There is no reason to think the term "judgment" carries a different meaning in section 998(c)(1). As we explained in *DeSaulles, supra,* 62 Cal.4th 1140, " '[a]s between the parties thereto and for purposes of enforcement of settlement agreements, a compromise agreement contemplating payment by defendant and dismissal of the action by plaintiff is the legal equivalent of a judgment in plaintiff's favor.' " (*DeSaulles*, at p. 1155, quoting *Goodstein v. Bank of San Pedro* (1994) 27 Cal.App.4th 899, 907.)

Moreover, as the majority below noted, plaintiffs' counsel conceded at oral argument "that the settlement agreement contemplated entry of judgment following the fee award."

Further, the trial court's construction of section 998(c)(1) fails to read its language in the full context of sections 998 and 1032. While section 1032 sets out the general rule that a prevailing party is entitled to recover its costs, it also permits parties to agree to a particular allocation of costs as part of a settlement agreement. Section 1032, subdivision (c), provides: "Nothing in this section shall prohibit parties from stipulating to alternative procedures for awarding costs in the litigation pursuant to rules adopted under Section 1034." We have previously advised that trial courts should "inquire into whether the parties in a given case have resolved the allocation of costs in their settlement agreement." (*DeSaulles*, *supra*, 62 Cal.4th at p. 1158.) But if settling parties do not resolve the allocation of costs, section 1032 authorizes the court to determine and award them. (*DeSaulles*, at p. 1158; see also *Great Western Bank v. Converse Consultants, Inc.* (1997) 58 Cal.App.4th 609, 614.) Limiting section 998(c)(1) to only provide for cost shifting when a case is resolved after a trial would create a significant exception to section 998(a)'s directive that the "costs allowed under [section 1032] shall be withheld or augmented as provided in this section." If the Legislature intended to limit cost shifting in that way, it could certainly have done so in a more obvious manner given the large percentage of cases resolved by settlement.[9] It seems unlikely such a significant exception

---

[9] Had it intended such a limitation, it could have written section 998(a) to provide that *except in cases resolved by*

would be tucked into the conditions that trigger mandatory cost shifting.

The trial court's construction of section 998 would undermine the statute's policy objectives, which we have repeatedly stated should be considered in its interpretation. (See *T. M. Cobb Co. v. Superior Court* (1984) 36 Cal.3d 273, 280 (*T. M. Cobb*); see also *Scott, supra*, 20 Cal.4th at p. 1114.) In *Bank of San Pedro*, we explained section 998's "carrot and stick" approach to encourage pretrial settlement. (*Bank of San Pedro, supra*, 3 Cal.4th at p. 804.) Construing section 998 to allow for cost shifting when a case settles after rejection of a section 998 offer will enhance this aspect of the statute and comports with "our prior recognition that '[t]he more offers that are made, the more likely the chance for settlement.' " (*Martinez, supra*, 56 Cal.4th at p. 1025, quoting *T. M. Cobb, supra*, 36 Cal.3d at p. 281.) Rewarding the making of reasonable offers, by imposing liability for postoffer costs on a rejecting offeree, is enhanced by an understanding that section 998 applies even to cases that settle before trial but after rejection of an offer. Offerors will be encouraged to make reasonable offers earlier; the better the offer, the more likely it is to be more favorable than the eventual result. There is little incentive to make one's best offer early if there is no cost-shifting benefit unless a case goes to trial. Conversely, the Legislature's decision to impose a penalty for the rejection of a reasonable offer is enhanced when offerees

---

*settlement*, "the costs allowed under [section 1032] shall be withheld or augmented as provided in this section" or that *in cases in which a judgment or award is obtained after trial or arbitration*, "the costs allowed under [section 1032] shall be withheld or augmented as provided in this section."

know that they will face a penalty if they continue litigation and ultimately achieve a lesser outcome.

It is true that, in the ebb and flow of litigation, incentives may change. Here, for example, plaintiffs ultimately accepted a resolution after the court indicated that it would resolve some pretrial motions against them, potentially undermining their chances of success, or at least their ability to achieve a more favorable result. As noted, one of the Legislature's goals in enacting section 998 was to encourage early settlement and to avoid the cost to both parties and the court when litigation is protracted even after a reasonable offer has been made. Rejection of a section 998 offer involves a tactical choice, balancing known benefits against uncertain and potentially unobtainable ones. The rule we articulate here may operate to incentivize further settlement negotiations in some circumstances and to discourage them in others, depending upon the litigants' evaluation of their own strategic positions. However, the interpretation clarifies for the parties the risks and rewards that they face. Moreover, it does not foreclose them from agreeing among themselves how to allocate costs.

### 2. *Plaintiffs' Contrary Arguments Are Unpersuasive*

Plaintiffs read the statute differently. They begin with the assertion that the absence of the terms "settle" or "settlement" in section 998(c)(1) "should be construed as showing a legislative intent" that there is no cost shifting in cases that settle. They urge other aspects of the statute's text support their position.

First, they note that section 998(c)(1) "asks whether the plaintiff received a 'judgment or award' that was more favorable than the [section] 998 offer." Relying on legal definitions of "judgment" and "award," plaintiffs urge those terms "refer to

dispositions reached *through trial, arbitration, or some other adjudication*.” According to plaintiffs, had the Legislature “meant to sweep in *every* mode of resolving a case, including settlement, it would’ve chosen a broader term, such as ‘result’ or ‘outcome.’ ” In their view, the Legislature’s word choice signals that it “conceived of section 998 as applying only to those specific situations where parties look to an *outside decisionmaker* to adjudicate their dispute.” Plaintiffs also point to the word “fails” in section 998(c)(1). They urge that the term “connotes defeat, abandonment, or ‘[i]nvoluntarily’ falling short of one’s purpose,” and argue that “a plaintiff who achieves a compromise settlement doesn’t ‘fail’ to obtain a more favorable judgment or award”; instead, “[b]oth *sides* have simply changed their goal from a trial in which they could win or lose, to a negotiated settlement that provides certainty.” At its core, plaintiffs’ argument is that the phrase “fails to obtain a more favorable judgment or award” limits section 998(c)(1)’s application to instances when the plaintiff has tried and failed to obtain a more favorable result by way of trial. They contend a party that agrees to a settlement does not try, and thus cannot fail, to obtain a more favorable judgment or award. Instead, it changes its objectives and, by agreeing to settle, removes section 998’s cost-shifting effects from the calculation of costs under section 1032.

This argument misses the mark. As explained above, nothing in the statute’s language limits its application to cases that end in trial nor exempts from its application cases that settle. Plaintiffs’ resort to the euphemism of “changed objectives” sidesteps the reality that one can choose to recognize or accept failure by pivoting to a different goal. Choosing to

mitigate a failure by shifting one's objectives does not mean the shortcoming never occurred.

Next, plaintiffs point to section 998, subdivision (e), which provides that costs awarded under section 998(c)(1) "shall be deducted from any damages awarded in favor of the plaintiff." (§ 998, subd. (e).)  Plaintiffs urge that this is "another clue that the Legislature intended an adjudicatory result to be the trigger for [section] 998's penalties," because "a settlement doesn't result in 'any damages awarded' in either party's 'favor.'"  "If the Legislature meant to penalize parties who achieved a pre-trial settlement," plaintiffs contend, it would have "used a term that encompassed settlement proceeds when it identified where the shifted costs would be paid from."  Contrary to plaintiffs' suggestion, the quoted language from section 998, subdivision (e), does not limit the statute's cost-shifting effects to instances in which there is a damages award after litigation.  Settlement agreements often refer to "damages" paid by one party to another, even though the payments will be made pursuant to a stipulated agreement not a court mandate.  (See, e.g., *Reck v. FCA US LLC* (2021) 64 Cal.App.5th 682, 693 (*Reck*).)  Moreover, by using the word "any," the statute embraces the possibility that there will be no damages awarded.

Plaintiffs also point to section 998, subdivision (f), which provides that any "judgment or award entered pursuant to [section 998] shall be deemed to be a compromise settlement."  They argue this language shows the statute distinguishes between "a formal judgment . . . entered in the wake of a settlement" and an "adjudicatory judgment."  This argument fares no better than the last.  The provision in question does not limit section 998's reach.  On the contrary, it was added to section 998's predecessor statute, former section 997 of the Code

of Civil Procedure (former section 997) (repealed by Stats. 1971, ch. 1679, § 1, p. 3605), "to make clear that issues settled in this manner are not deemed actually litigated." (*California State Auto. Assn. Inter-Ins. Bureau v. Superior Court* (1990) 50 Cal.3d 658, 665, fn. 3.) It appears that, before the amendment, courts were giving settlements reached under the statute "collateral estoppel effect." (*Ibid.*) The Legislature added the language in question to clarify that courts should not do so.

Plaintiffs argue that, even if we disagree with their textual reading, section 998 is "[a]t the very least . . . *susceptible* to [their] interpretation." Therefore, they urge us to review the statute's legislative history to determine whether the Legislature intended the statute's cost-shifting provisions to apply when a case settles. Assuming for the sake of argument that the statute is ambiguous, the legislative history cited by plaintiffs does not support their reading of section 998.[10] The

---

[10] Plaintiffs requested we take judicial notice of legislative history related to seven amendments to section 998 and former section 997. In their briefing, plaintiffs cite only 14 documents from among those materials. We deny plaintiffs' request for judicial notice as to the materials not cited in their briefs on the ground plaintiffs failed to explain their relevance to the dispositive issues on appeal. (See *Hughes Electronics Corp. v. Citibank Delaware* (2004) 120 Cal.App.4th 251, 266, fn. 13.) Among the materials cited in plaintiffs' briefs are three letters to former Governor Reagan that do not illuminate the question before us, and we deny plaintiffs' request as to them. (*Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal. 4th 828, 845; see also *Cummins, Inc. v. Superior Court* (2005) 36 Cal.4th 478, 492, fn. 11.) As to the remaining legislative history cited in plaintiffs' brief, a court will take judicial notice of the legislative history of a statute to ascertain the statute's purpose and meaning if the statute is ambiguous. (*Quelimane Co. v. Stewart Title Guaranty*

pieces of cited legislative history that most support plaintiffs' argument are two excerpts from bill analyses prepared: (1) for the Senate Judiciary Committee in 2001 in conjunction with an amendment to section 998 (Stats. 2001, ch. 153, § 1, pp. 1444–1446); and (2) for the Assembly Judiciary Committee in 2015 in conjunction with another amendment to section 998 (Stats. 2015, ch. 345, § 2, pp. 3290–3291). Each bill analysis described section 998 as applicable when a rejecting offeree obtains a less favorable award or judgment "at trial." These scattered remarks, found in legislative history of amendments enacted more than a century after section 998 was first made part of California law, do not operate to limit the statute's reach in a manner inconsistent with its plain language.

Plaintiffs also make three policy-based arguments in support of their position. First, they urge section 998 should not be construed in a way that penalizes a party for settling because the statute's purpose is to *encourage* settlement. This argument misapprehends why cost shifting would apply here. A party that does not accept a section 998 offer, and then settles for less later, is not being punished for settling. It is being punished for not accepting a reasonable settlement offer and then obtaining a less favorable result. This is precisely what the statute is designed to do. (See *Martinez, supra,* 56 Cal.4th at p. 1017; *Bank of San Pedro, supra,* 3 Cal.4th at p. 804.)

---

*Co.* (1998) 19 Cal.4th 26, 45–46, fn. 9.) But a "request for judicial notice of published material is unnecessary. Citation to the material is sufficient." (*Ibid.*) As we did in *Quelimane*, we treat "the request for judicial notice as a citation to those materials that are published." (*Ibid.*)

Second, they argue that, during the pretrial phase of litigation, section 998 should be construed to afford the parties maximum flexibility. They point out that there are "countless" reasons why a party might want to settle after declining a section 998 offer. Discovery "may unearth bad facts"; new authorities "may change the case's strength"; witnesses "may become unavailable"; changed personal circumstances could "make the prospect of drawn-out litigation a bigger ask"; or the trial court might make rulings adverse to the party's position. Plaintiffs also note that a party that makes a section 998 offer can revoke its offer at any time before the offer is accepted (*T. M. Cobb*, *supra*, 36 Cal.3d at pp. 280–281), and argue it would be unfair if a party that receives but does not accept such an offer could not reconsider its position and settle for less later. They urge that section 998's purpose is to encourage the settlement *before trial*, not *the earliest possible* settlement. Contrary to plaintiffs' assertions, section 998 is specifically designed to limit parties' flexibility and to encourage certain conduct: the making and acceptance of reasonable settlement offers with an eye toward reducing costs. The statute does so by shifting liability for postoffer costs to a party that rejects such an offer and fails to obtain a more favorable result. Section 998 purposely places on the party who rejects a reasonable offer the risk that changed circumstances might lead to a worse result. (*Sviridov v. City of San Diego* (2017) 14 Cal.App.5th 514, 520–521.) This limitation on flexibility is a feature of the scheme, not a bug.

Third, plaintiffs argue the proposed construction of section 998 will create confusion and embroil trial courts in hearings over whether settlement offers are more or less favorable than the results achieved by the parties who rejected them. This seems unlikely. The more likely result is that parties, knowing

that section 998 cost shifting can apply absent a different and agreed-upon allocation, will deal with the issue of costs in their settlement agreements rather than leaving it to a court to decide by way of a section 1032 motion. Section 1032, subdivision (c), specifically empowers the parties to do so.

Plaintiffs' other arguments are also unpersuasive. Relying on the doctrine of merger in contracts, they argue that defendant's second 998 offer was merged into the stipulated settlement reached by the parties on the first day of trial and, as a result, had no continuing cost-shifting effect. In contract law, the doctrine of merger affects the interpretation and enforcement of a contract by providing that a written agreement supersedes all prior discussions, negotiations, and agreements concerning the same subject matter. (See *Bradford v. So. Cal. Petroleum Corp.* (1944) 62 Cal.App.2d 450, 461.) Courts can apply "general contract law principles . . . to section 998 offers and acceptances . . . where such principles neither conflict with the statute nor defeat its purpose." (*T. M. Cobb, supra*, 36 Cal.3d at p. 280; see also *Poster v. Southern Cal. Rapid Transit Dist.* (1990) 52 Cal.3d 266, 271.) The merger doctrine has no application here. There is no dispute about the interpretation or enforceability of the stipulated settlement or the terms of defendant's second 998 offer. Defendant is not seeking to enforce any *contractual* rights under the stipulated settlement or its offer; instead, it is seeking to enforce *statutory* rights arising under section 998 because plaintiffs allowed defendant's offer to be deemed withdrawn. The merger doctrine does not undermine defendant's statutory rights under section 998.

Plaintiffs also argue the proposed construction of section 998 would upset settled expectations regarding the statute's interpretation. According to plaintiffs, this "cost-shifting regime

has been part of California law for over 150 years" and yet, before now, "*no* California court held that section 998 cost-shifting applies to a case resolved by a *pre-trial settlement*." The state of the legal landscape plaintiffs invoke is not so clear. Several decisions have indicated that section 998 applies in circumstances where the parties settled. (See, e.g., *Westamerica Bank v. MBG Industries, Inc.* (2007) 158 Cal.App.4th 109, 130–131; see also *Reck*, *supra*, 64 Cal.App.5th at pp. 698–700; *McKenzie v. Ford Motor Co.* (2015) 238 Cal.App.4th 695, 705–708.) Moreover, the sparse case law applying section 998 in cases that have settled does not tend to indicate definitively whether the statute applies in those circumstances. It seems equally plausible that there are not many cases addressing the issue because there has been no substantial question that the statute applied to cases that settle or because it is a common, if sometimes overlooked, practice to allocate costs in settlement agreements. (See *DeSaulles*, *supra*, 62 Cal.4th at p. 1158.)

## III. DISPOSITION

The judgment of the Court of Appeal is affirmed.


CORRIGAN, J.

**We Concur:**

**GUERRERO, C. J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Madrigal v. Hyundai Motor America

_____

<u>**Procedural Posture**</u> (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 90 Cal.App.5th 385
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S280598
**Date Filed:** March 20, 2025

_____

**Court:** Superior
**County:** Placer
**Judge:** Michael W. Jones

_____

**Counsel:**

Theta Law Firm, Soheyl Tahsildoost, Kainoa Aliviado; SJL Law, Julian G. Senior; Nelson Mullins Riley & Scarborough, Jennifer T. Persky and Robert L. Wise for Defendant and Appellant.

Fred J. Hiestand for Civil Justice Association of California as Amicus Curiae on behalf of Defendant and Appellant.

Complex Appellate Litigation Group, Ben Feuer, Greg Wolff and Frank A. McGuire for the Chamber of Commerce of the United States of America as Amicus Curiae on behalf of Defendant and Appellant.

Horvitz & Levy, Lisa Perrochet, John A. Taylor, Jr., and Justin R. Sarno for the Civil Justice Association of California, the Alliance for Automotive Innovation and the California Manufacturers and Technology Association as Amici Curiae on behalf of Defendant and Appellant.

Knight Law Group, Roger Kirnos; The Altman Law Group, Bryan C. Altman; Law Office of Michael H. Rosenstein, Michael H. Rosenstein; Greines, Martin, Stein & Richland, Cynthia E. Tobisman, Alana H. Rotter, Joseph V. Bui and Katarina Rusinas for Plaintiffs and Respondents.

The Arkin Law Firm and Sharon J. Arkin for Consumer Attorneys of California and Consumers for Auto Reliability and Safety as Amici Curiae on behalf of Plaintiffs and Respondents.

Arthur D. Levy and Natasha E. Blazer for Housing and Economic Rights Advocates and the Center for Consumer Law & Economic Justice as Amici Curiae on behalf of Plaintiffs and Respondents.